## Loew vs. The State.

*April 16 — May 15, 1884.*

CRIMINAL LAW AND PRACTICE. *(1) Proof of* corpus delicti. *(2) Jury may examine statutes. (3) Receiving second verdict after refusal to receive first. (4) Reversal of judgment: verdict contrary to erroneous charge.*

1. A man apparently physically sound received a blow upon his head which crushed in his skull, leaving him helpless and insensible. He remained unconscious three quarters of an hour and then died. No other cause of death being suggested, the conclusion is irresistible that he died of the injury, although there is no expert testimony on the subject.

2. It is not error to permit the jury to examine for themselves the statutes containing the law of the case.

3. At the request of the defendant and against the protest of the prosecuting attorney, the court refused to receive a verdict of manslaughter in the first degree, and sent the jury back to find another verdict. *Held*, that the defendant could not take advantage of the irregularity, if any, in such procedure.

4. A judgment of conviction will not be reversed merely because the verdict was contrary to the charge of the court, if such charge was erroneous and the verdict was one which might properly have been rendered had the charge stated the law correctly.

ERROR to the Municipal Court of *Milwaukee* County.

The information in this case charges that, on a certain day and at a certain place therein specified, the plaintiff in

error did feloniously kill and slay one John Fiegenst. It thus charges, in the form authorized by the statute (R. S., sec. 4660), that the accused committed the crime of manslaughter. The plaintiff in error pleaded not guilty, and was tried for the offense charged.

The testimony on the trial shows that many people of the neighborhood were assembled at a saloon and dancing-hall, on a holiday occasion, among whom were the deceased and the accused. The accused was a constable. During the evening, while dancing was in progress in the dancing-hall, in which the accused was participating, the deceased was in the hall in a somewhat intoxicated condition. Being annoyed by some boys, the deceased became excited, threw off his coat, and went across the hall to where the boys were, with the apparent purpose of chastising or fighting them. The accused interfered, and endeavored to quiet the deceased and to make him sit down. Failing in this, he seized deceased from behind and pushed him from the hall through a passage-way into the saloon or bar-room, and through a door opening upon a porch. This porch is one step lower than the bar-room, and some thirty inches higher than the ground, and is from four and a half to five feet wide. A flight of three steps leads from it to the ground. At the foot of these steps is a stone walk.

Immediately after the deceased was thus ejected from the bar-room, he was found lying on his back on the stone walk, insensible, and bleeding, and had a large hole in the left side of the back of his head. He never recovered consciousness, but died in three fourths of an hour after being hurt.

The testimony also tends to show that the accused ejected the deceased violently from the house; that he used rough and threatening language to him; and that he followed the deceased out of the house to the porch. On these points, however, there is a conflict of testimony.

Several instructions were proposed on behalf of the ac-

cused, which, with a single exception, were given to the
jury. Of those given, all but one was given in the form
proposed, and the substance of that one was given in the
general charge. The jury were instructed that there was
no evidence to justify a conviction of any degree of man-
slaughter save the fourth degree. The instruction refused
was to the effect that the jury must acquit the accused, be-
cause there was no evidence of the *corpus delicti.*

The only exceptions to the general charge are to two sen-
tences therein, in which the judge speaks of "the injury
which resulted in his death," and of "the injuries which
caused his death;" and to the following: "You will have
the statute in the jury-room, and can examine the sections in
relation to manslaughter." The first exception goes upon
the ground that the sentences objected to assume the exist-
ence of the *corpus delicti;* that is to say, it assumes that the
deceased came to his death in consequence of the wound
in his head.

The jury came into court with a verdict of guilty of man-
slaughter in the *first* degree. The accused, by his counsel,
objected to the reception of the verdict, and, against the pro-
test of the district attorney, the objection was sustained by
the court, and the jury were again sent out. Thereafter
they returned a verdict of guilty of manslaughter in the
*second* degree. The last verdict was received against the
objection of the accused.

The defendant moved in arrest of judgment, on the
grounds that the *corpus delicti* was not proved, and that the
court had no authority to reject the first verdict, and hence
the last verdict is a nullity. The motion in arrest was over-
ruled, and thereupon the accused moved for a new trial, on
the grounds that the verdict is contrary to law, to the in-
structions of the court, and to the evidence; that the *corpus
delicti* was not proved; and that injustice was done the
accused by permitting the jury to consult the statutes during

their deliberations. This motion also was denied, and the court proceeded to judgment and sentence.

The accused has sued out a writ of error on such judgment.

For the plaintiff in error the cause was submitted on the brief of *Jared Thompson, Jr.* To the point that the jury were bound to take the law from the court, and in the presence of the accused and his counsel, he cited: Wharton's Cr. Pl. & Pr., sec. 830; Graham & W. on New Trials, 62–70; *People v. Hartung*, 4 Parker's Cr. Rep., 256, 314, 330; *Burrows. v. Unwin*, 3 Carr. & P., 310; *Comm. v. Jenkins*, Thach. Cr. Cas., 118, 128; *State v. Hartman*, 46 Wis., 248; *Chapman v. C. & N. W. R'y Co.*, 26 id., 295, 309; *Hogan v. State*, 36 id., 238; *Hardy v. State*, 7 Mo., 607; *Newkirk v. State*, 27 Ind., 1; *Merrill v. Nary*, 10 Allen, 416; *State v. Smith*, 6 R. I., 33.

For the defendant in error the cause was submitted on the brief of the *Attorney General.* He argued that the court, having said in the charge that the offense was nothing more than manslaughter in the fourth degree, had the right to refuse to receive the first verdict finding the accused guilty of manslaughter in the first degree. *State v. Gilkie*, 35 La. Ann., 53; *People v. Bush*, 3 Parker's Cr. Rep., 552; *State v. Cooley*, 13 S. C., 1; *People v. Gilbert*, 57 Cal., 96.

LYON, J. 1. The instruction proposed on behalf of the plaintiff in error, which the court refused to give, was properly refused. It called for a direction to the jury to acquit the accused, because there was no proof that the deceased died from the effects of the wound which he received upon being thrown out of the house. From the foregoing statement of facts we think it is conclusively proved that his death was caused by the wound in his head. True, no expert testimony on the subject was given, but all the facts show that his death must have been caused thereby. A man appar-

Loew vs. The State.

ently physically sound receives a blow upon his head which crushes in his skull, and leaves him helpless and insensible. He remains in a comatose condition three fourths of an hour, and then dies. Here we have an adequate cause of death, and no other is suggested. The conclusion is irresistible that he died of the injury. This is all that the learned judge assumed in his general charge, and under the testimony the assumption is not error.

2. Neither was it error to permit the jury to examine the statutes relating to manslaughter. The court had already read to the jury the portions of those statutes which were deemed applicable to the case, and had given them in the charge, but the result would have been the same had this not been done. The charge of the court to the jury in any case, civil or criminal, if correct, is but a statement of the law of the case. This court has held that it is not error to permit the jury to take to their room the written charge of the court. *Wood v. Aldrich*, 25 Wis., 695. The ground of that decision is that, by having the opportunity to examine the charge for themselves, " they would know more thoroughly its precise terms than they could if compelled to trust entirely to recollection after hearing it read once." The same reason applies for allowing the jury to examine for themselves the statutes containing the law of the case.

3. At the instigation of the accused, the court refused to receive the first verdict, which convicted him of manslaughter in the first degree, and sent the jury out to find another verdict. Whether such procedure was regular or irregular, we need not here determine. If irregular, the accused cannot take advantage of it, for the procedure was had at his request, and against the protest of the prosecuting attorney. It is the same as though, on the coming in of a verdict in any case, the parties should stipulate that the verdict be not received, but that the same jury should find another verdict on the testimony already in. We perceive no valid objection

to such a stipulation, and think neither party could after-
wards be heard to maintain that the last verdict was void
or irregular merely because a different verdict had previ-
ously been returned.   In this case, the objection of the
defendant to receiving the first verdict, and his implied con-
sent that the jury should return another verdict, amount to
such a stipulation on his part, to which the prosecution was
compulsorily made a party by the ruling of the court sus-
taining the objection of the defendant.

4. Sec. 4351, R. S., enacts that "any person who shall
unnecessarily kill another, either while resisting an attempt
by such other person to commit any felony, or to do any
other unlawful act, or after such attempt shall have failed,
shall be deemed guilty of manslaughter in the second de-
gree." The court instructed the jury, as proposed by the
accused, that "the facts and circumstances in evidence here
will not warrant the conviction of the defendant of man-
slaughter in the second degree." This instruction was too
favorable to the accused. The testimony tended to show
that the deceased was attempting, and had already com-
menced, to do an act which was a breach of the peace; that
in resisting it the accused used more force and violence than
was necessary to that end; and that the death of the de-
ceased resulted therefrom. There was testimony, therefore,
sufficient to sustain the conviction for manslaughter in the
second degree. The trial judge came to the same conclusion
when he denied the motion for a new trial, for that was
necessarily an adjudication that the verdict was sustained by
the evidence.

We shall not enter upon a discussion of the relative pow-
ers and functions of judge and jury in criminal cases, re-
garding the determination of questions of law, or attempt
to state the limits, or define the powers and duties, of either
judge or jury in respect thereto. This is a subject upon
which much has been written, and regarding which there is

much conflict of opinion in the books. It is sufficient to say here that we are cognizant of no case in which a judgment of conviction has been reversed merely because the verdict was contrary to the charge of the court, where such charge was an erroneous statement of the law and the verdict was one which should or might properly have been rendered had the court given the law in charge correctly. Neither are we aware of any rule of law against upholding such a verdict, notwithstanding the erroneous adverse charge.

*By the Court.*— The judgment of the municipal court is affirmed.