STATE, Respondent, vs. SAWYER, Appellant.*

*January 9—February 3, 1953.*

\* Motion for rehearing denied, without costs, on March 31, 1953.

For the appellant there were briefs and oral argument by *Morris Podell* and *Ray T. McCann,* both of Milwaukee.

For the respondent there was a brief by the *Attorney General* and *William J. McCauley,* district attorney of Milwaukee county, *Herbert L. Mount,* special prosecutor, and *Harold J. McGrath,* special assistant district attorney, and oral argument by *Mr. Mount* and *Mr. McGrath.*

CURRIE, J.   Counsel for the appellant Sawyer raise the following four issues on this appeal:

(1) The indictment is fatally defective in failing to cite the statute alleged to have been violated by Sawyer.

(2) Sawyer was denied a speedy trial as required by the Wisconsin constitution.

(3) The trial court erred in concluding that the testimony and evidence sustained a verdict of guilty.

(4) The trial court erred in refusing to set aside the verdict after determining that the prosecutor's written notes of his final argument to the jury inadvertently were taken into the jury room and were there during the jury's deliberations.

It is the position of defendant's counsel that if any of the first three alleged grounds of error are ruled by this court in favor of Sawyer, then Sawyer is entitled to a judgment of absolute dismissal; while the remedy as to the fourth ground of error would be a new trial.

The indictment returned by the grand jury set forth all the essential elements to charge the crime of bribery against the defendant under the provisions of sec. 346.06, Stats., but failed to cite the number of this statute which Sawyer was charged with having violated. Sec. 355.14 (2), Stats. 1949, provides as follows:

"The information or indictment shall contain the name of the court in which the action is pending, the title of the action, the name of the defendant or a description sufficient to identify him, *and a citation of the statute which he is charged with having violated,* and shall conclude with the words 'against the peace and dignity of the state.' " (Emphasis supplied.)

It is the contention of the state that Sawyer waived this objection to the sufficiency of the indictment by failing to raise the same before trial by motion. Sec. 355.09 (3), Stats. 1949, specifically provides that the objections based on insufficiency of the indictment "must be raised before trial by motion or be deemed waived." The defendant did under date of February 28, 1951, more than a year before the case

was called for trial, move to dismiss the indictment upon a number of grounds, among them being:

"4. Upon information and belief, that the municipal court of the city and county of Milwaukee, state of Wisconsin, is without jurisdiction to try this case."

We are of the opinion that the above-quoted portion of defendant's motions before trial was not sufficient to apprise the trial court that Sawyer's counsel was questioning the sufficiency of the indictment on the ground that it failed to cite the number of the statute which Sawyer was charged therein with having violated. If a specific motion had been made before trial alleging the defect in the indictment raised for the first time on this appeal, the trial court in its discretion would have had the power to have ordered the amendment of the indictment, so as to cite the statute number, under the provisions of sec. 355.09 (8), Stats. 1949, which provides:

"No complaint, indictment, information, process, return, or other proceedings shall be dismissed or reversed for any error or mistake where the case and the identity of the defendant may be rightly understood by the court; and the court may order an amendment curing such defects."

Although the indictment against the defendant was returned on April 25, 1950, the trial was not commenced until April 15, 1952. Sec. 7, art. I of the Wisconsin constitution provides:

"In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a *speedy public trial* by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall

have been previously ascertained by law." (Emphasis supplied.)

Sawyer contends that his right to a speedy trial, as guaranteed to him under the foregoing provisions of our state constitution, was denied because of the long delay which ensued between the return of the indictment and the commencement of the trial, and that by reason of such denial he is now entitled to dismissal of the action. The state advances, as one reason for the long delay in bringing the action on to trial, the holding in abeyance of the action against Sawyer pending disposal of the outcome of the prosecution of Krause under an indictment returned by the same grand jury which charged Krause with having accepted a bribe from another party in connection with another matter. The facts in connection with such case against Krause are reported in the decision of this court in *State v. Krause* (1951), 260 Wis. 313, 50 N. W. (2d) 439. In the *Krause Case* the indictment was returned on March 23, 1950, and Krause's counsel thereafter filed motions attacking the constitutionality of the Municipal Court Act for Milwaukee county pursuant to which the grand jury had been convened and also for dismissal on the ground that the privacy and secrecy of the grand jury proceedings had not been properly maintained. Subsequent to such motions on the part of Krause, similar motions to dismiss raising the same legal questions were made in behalf of Sawyer in the instant case. Krause having been indicted first, his case was brought on for trial and his conviction was then appealed to this court and the decision on such appeal was not rendered until December 4, 1951. The state did not attempt to bring the Sawyer case on for trial until after this court had rendered its decision in the *Krause Case* in view of the fact that the latter decision would dispose of the aforementioned legal issues raised by Sawyer on his motions to dismiss.

After our decision in the *Krause Case* there was still some further delay in bringing the instant case on for trial due to the fact that Sawyer had previously filed an affidavit of prejudice against the municipal judge of Milwaukee county which necessitated bringing in a circuit judge from outside Milwaukee county to try the case.

While there may have been good reason for part of the delay in bringing the instant case on for trial, there would seem to be merit to defendant's contention that the delay from April 25, 1950 (the date of the return of the indictment), until April 15, 1952 (the date of commencement of trial), did not comply with the constitutional provision requiring "speedy trial." However, the briefs of counsel cite no authorities holding that a defendant, such as Sawyer, is entitled to dismissal of the criminal proceedings against him for failure of the state to bring the case on for trial where the defendant has taken no action on his own part to request that his case be brought on for trial.

On February 28, 1951, defendant did include among his motions for dismissal of the indictment the ground "that there has been unreasonable delay in bringing the defendant to a speedy and public trial under the indictment, contrary to the provisions of sec. 7 of art. I of the Wisconsin constitution." Under date of March 20, 1951, the trial court denied Sawyer's motions for dismissal, including the one just described.

We are of the opinion that the defendant, as a condition precedent to requesting dismissal of the criminal charge pending against him on the ground that he has been denied his constitutional right of a speedy trial, must first have taken some affirmative action demanding that the case be brought on for trial. This the defendant in the instant case did not at any time do.

It is urged in behalf of Sawyer that the trial court erred in concluding that the testimony and evidence offered in the

trial sustained a verdict of guilty. The learned trial court in his decision on defendant's motions after verdict stated:

"The court is satisfied that there was sufficient evidence before the jury which, if believed by the jury, would justify the jury in returning a verdict of guilty.
"It is the province of the jury to determine the facts, and having determined the facts the court does not feel that it has any right to set aside the verdict of the jury."

We have reviewed the testimony and evidence in this case and fully concur that the trial court was right in concluding that the same was sufficient, if believed by the jury, to warrant the jury in returning a verdict of guilty. In view of the fact that there must be a new trial we refrain from commenting on such evidence at this time.

We now reach the last contention raised by counsel for Sawyer, i. e., that a new trial should be ordered in view of the fact that the special prosecutor's written notes substantially stating his concluding argument to the jury were inadvertently taken into the jury room along with the exhibits and remained there during the deliberations of the jury.

After the trial court had charged the jury and sworn the bailiffs, the court instructed the clerk to pick up the exhibits and informed the jury that the bailiff would bring the exhibits to the jury "in a few minutes." Some of the exhibits were lying on the table of counsel, as were also the special prosecutor's argument notes, and inadvertently the clerk picked up such notes and included them with the exhibits he turned over to the bailiff to take into the jury room where they remained during the deliberations of the jury. The prosecutor's notes were not discovered by the clerk until he checked over the exhibits two days after the jury had been discharged, and he then promptly advised the court thereof. The court then had the jurors subpoenaed to appear at a hearing at which the court made inquiry as to the presence of the prosecutor's notes in the jury room. The state filed

affidavits of all twelve jurors·at a subsequent hearing and the special prosecutor also made and filed an affidavit. The testimony of the clerk was also taken. Seven of the jurors recalled seeing the prosecutor's notes in the jury room while five did not see them. There is no showing that any of the jurors were in any way influenced in arriving at their verdict or gave the same any consideration except the juror Russell H. Weiss. Weiss, in his affidavit, stated that he read about two of the eleven pages of the prosecutor's argument contained in such written notes and stated:

"That the notes refreshed my memory as to the facts argued to the jury by Mr. Mount and they have influenced me in arriving at my decision in this case."

The trial court held that no prejudicial error had been established which required a new trial and that the juror Weiss' affidavit was subject to the interpretation that the prosecutor's written notes merely refreshed such juror's recollection of the facts stated in the prosecutor's argument and that he was influenced by such argument.

This court has uniformly held that in situations involving personal or social misconduct with members of the jury by officers of the court, counsel, or one of the parties, the purity of the verdict must at all times be sustained because where misconduct occurs suspicion falls upon the administration of justice and the jury system is brought into disrepute. In such cases the possibility of improper influence is present and can only be proved or disproved with great difficulty. For these reasons a new trial has been ordered in such cases without the necessity of establishing that prejudice did result to the rights of the losing party through such alleged misconduct. Decisions so holding are: *State v. Cotter* (1952), 262 Wis. 168, 54 N. W. (2d) 43; *Surma v. State* (1952), 260 Wis. 510, 51 N. W. (2d) 47; and *La Valley v. State* (1925), 188 Wis. 68, 205 N. W. 412.

Counsel for Sawyer contend that these decisions govern the instant case. There is some doubt whether the error complained of in the instant case is of the type strictly constituting *"misconduct of the jury."* If it is properly embraced within the term of *"misconduct of the jury,"* it stands in an entirely different category than the misconduct which occurred in the three decisions cited, supra.

Sec. 274.37, Stats. 1949, provides:

"No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

Mr. Justice OWEN in the court's opinion in *La Valley v. State, supra,* made reference to this statute, and stated (p. 81):

"It will be noticed that the statute does not in express terms cover misconduct of the jury, and, at any rate, we should be very reluctant to find that such misconduct did not affect substantial rights."

Whether the provisions of sec. 274.37, Stats., are applicable to this type of error or not, a new trial should not be granted for such error unless prejudice is established according to the weight of authority. The general rule is well stated in 39 Am. Jur., New Trial, p. 97, sec. 84:

"The question considered at this point is whether a new trial is required when papers and exhibits which the trial court has not directed or authorized to be taken to the jury room have been sent to the jury room through inadvertence or accident, or through the unauthorized and improper act

of a party or his counsel, or of some third person. Whether such act requires the granting of a new trial depends in part upon whether prejudice can be said to have resulted to the party seeking a new trial, and whether the paper was given to the jury by the adverse party. The general rule is that the fact that a paper, which should not properly be with the jury during their deliberations, has been sent to the jury room through inadvertence or accident, or even through error of the court, and not through the connivance or design of the prevailing party, does not require the setting aside of the verdict and the granting of a new trial if it does not appear that the paper was of a character to prejudice the unsuccessful party, or that other circumstances rendered the reading of it harmful."

This same general rule is stated in the annotations appearing in 20 A. L. R. 1187, and 67 A. L. R. 1523, and the cases supporting such rule are cited and summarized in such two annotations.

This court in the cases of *Loew v. State* (1884), 60 Wis. 559, 19 N. W. 437, and *Bernhardt v. State* (1892), 82 Wis. 23, 51 N. W. 1009, held that the mere fact that the jury had a statute book in the jury room during its deliberations from which it might have learned the nature of the penalties was not sufficient error to justify a reversal and ordering a new trial.

In the recent case of *People v. McCrea* (1942), 303 Mich. 213, 6 N. W. (2d) 489, an officer of the court through a "blunder" handed through the doorway of the jury room to the foreman of the jury, during the jury's deliberations, three volumes of testimony without authority from the trial judge. An inquiry later disclosed that these volumes remained in the jury room but ten minutes, and no part of the testimony contained therein was read by the jury. The Michigan supreme court held that this was not grounds for new trial and said (p. 265) :

"The mere fact that the volumes of testimony were present in the jury room for not exceeding ten minutes, *without some showing that prejudice may have resulted,* would not constitute grounds for reversible error." (Emphasis supplied.)

It was therefore proper for the trial court in the instant case to conduct an inquiry to determine whether the prosecutor's notes, or any part thereof, were read by any member of the jury. Such inquiry disclosed that at least one member of the jury had read part of such notes, which notes contained statements of facts brought out in the evidence. However, after such inquiry disclosed that part of such notes had been so read in the jury room their very nature was of such character as to prejudice the defendant and require a new trial.

The trial court assumed that there was no prejudice because the prosecutor's notes only recited facts which were stated in the prosecutor's argument to the jury. However, this would give the state an unfair advantage over the defense because it would refresh the jurors' minds as to facts favorable to the state without the defense having before the jury in written form facts favorable to the defendant which might have explained or rebutted the facts contained in the prosecutor's notes. The error was prejudicial because it deprived the defendant of a fair trial.

*By the Court.*—Judgment reversed and cause remanded for a new trial.