**Petition of Walter J. SAWYER for a Writ of Habeas Corpus.**

**Walter J. SAWYER, Petitioner,**

v.

**Max A. BARCZAK, Sheriff, Respondent.**

**Civ. A. No. 6477.**

United States District Court,
D. Wisconsin, E. D.

Jan. 27, 1955.

---

14. Defendant's testimony.

15. Defendant's testimony.

688

Carl R. Becker, Milwaukee, Wis., Warren Magee, Washington, D. C., of counsel, for petitioner.

Vernon W. Thomson, Atty. Gen., William A. Platz, Asst. Atty. Gen., William J. McCauley, Dist. Atty., Milwaukee, Wis., Herbert L. Mount, Sp. Prosecutor, Milwaukee, Wis., for respondent.

DUFFY, Acting District Judge.

This is a petition for a writ of habeas corpus. Petitioner is a Milwaukee automobile dealer who was convicted in a Wisconsin State court of violation of § 346.06, Wisconsin Statutes. The charge was that he gave Albert J. Krause, then a Milwaukee alderman, a discount on a 1949 Buick automobile, said discount amounting to about $600 (Count 1), and $3,000 in cash (Count 2), with the intention of influencing Krause's judgment and official actions to prevent the proposed demolition by the Milwaukee city authorities of a building then occupied by Sawyer Downtown Motors, Inc., a corporation of which petitioner was the principal stockholder and executive manager.

Petitioner was indicted on April 25, 1950. His first trial was commenced on April 15, 1952 and he was convicted upon both counts of the indictment. Upon appeal to the Wisconsin Supreme Court the judgment of conviction was reversed, State v. Sawyer, 263 Wis. 218, 56 N.W. 2d 811, because the prosecutor's notes used on oral argument were inadvertently sent in to the jury room. A second trial was commenced on July 20, 1953, and petitioner was again found guilty on both counts. The Wisconsin Supreme Court affirmed the conviction. State v. Sawyer, 266 Wis. 494, 63 N.W.2d 749. The United States Supreme Court denied a petition for certiorari, 348 U.S. 855, 75 S.Ct. 80, and thereafter, a petition for

rehearing was likewise denied. 348 U.S. 890, 75 S.Ct. 205.

The petition for habeas corpus herein asserts that petitioner has been deprived of federal constitutional rights, 1) in that he was denied a speedy trial in violation of the due process provisions of the 14th amendment; and 2) the reckless use by the State of Wisconsin of the perjured testimony of Albert J. Krause deprived petitioner of a fair and impartial trial guaranteed to him by the due process provisions of the 14th amendment. The State of Wisconsin has moved to dismiss the petition for habeas corpus claiming that petitioner has not exhausted his state remedies in that he did not apply to the Wisconsin state courts for a writ of habeas corpus.

### Petition To Dismiss

Title 28 U.S.C. § 2254 provides:

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, * * *.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

In the trial court and in the Supreme Court of Wisconsin, petitioner raised the federal questions that he was denied a speedy trial, and that he did not receive a fair trial because the testimony of Krause was perjured. Thereafter, he filed a petition for a Writ of Certiorari in the Supreme Court of the United States again raising these two federal questions.

The Wisconsin state courts have spoken on the issues raised here. It would be a useless gesture to ask them to decide these issues once more. I hold that petitioner Sawyer has complied with the Federal Statute requiring an exhaustion of State court remedies. The motion of the State of Wisconsin to dismiss the petition for habeas corpus because remedies in the State Courts were not exhausted is denied.

### Claimed Denial of a Speedy Trial

Sawyer was indicted on April 25, 1950. The following day he was released on bail and during all the proceedings in the State courts and before the United States Supreme Court, and also pending the instant proceeding, Sawyer has been at liberty on bail.

On February 7, 1951 Sawyer filed an affidavit of prejudice against Municipal Judge Steffes which necessitated calling in a Circuit Judge to try the case. On February 27, 1951 Circuit Judge Boileau of Wausau, Wisconsin, assumed jurisdiction.

Alderman Krause had been previously indicted on bribery charges pertaining to the issuance of a tavern license. In his behalf motions were filed attacking the constitutionality of the Municipal Court Act of Milwaukee, Wisconsin, pursuant to which the grand jury had been convened, and also asking for dismissal of the charges on the ground that the secrecy of the grand jury proceedings had not been properly maintained. On February 28, 1951, the day after Judge Boileau had assumed jurisdiction, similar motions raising the same legal questions were made in behalf of Sawyer who had been indicted by the same grand jury. His motion to dismiss listed fifteen grounds. However, on March 1, 1951 an amended motion to dismiss the indictment was filed upon behalf of Sawyer and the sixteenth paragraph stated "Upon information and belief, that there has been an unreasonable delay in bringing the defendant to a speedy and public trial under the indictment, contrary to the provisions of Section 7 of Article I of the Wisconsin Constitution,

and Article V[1] of the Amendments to the United States Constitution." On April 6, 1951 motion to dismiss the indictment was denied.

Sawyer was arraigned and pleaded "Not Guilty" on May 5, 1951. The prosecutor moved for consolidation for the purpose of trial of the two counts against Sawyer with two similar counts against Krause and this motion was subsequently granted. On June 5, 1951 a jury was present and the State elected to proceed to try the Krause case. On the same date Sawyer executed a printed form which waived a trial by jury and consented to an immediate trial before the Court without a jury. The State objected to the waiver of a jury trial and the Court sustained the objection.

Krause was convicted of the charges of bribery and his case was promptly appealed to the Supreme Court of Wisconsin. An examination of the briefs and records shows that the principal grounds for the appeal were the claimed invalidity of the acts of the grand jury, the identical issues which had been raised by Sawyer. The decision of the Supreme Court was handed down on December 4, 1951 and the objections to the validity of the grand jury and its proceedings were overruled. State v. Krause, 260 Wis. 313, 50 N.W.2d 439.

The only request ever made to the Court by the State for a delay in the Sawyer trial was on June 5, 1951. It was obvious that the Court could not proceed that day with the trial of both the Krause and Sawyer cases, and the State elected to proceed with the trial of Krause who had been first indicted. It is also understandable that neither the State nor the defendant would insist on the trial of the Sawyer case while the Krause case was on appeal, for if the Supreme Court agreed with Krause's contention that the proceedings of the grand jury were invalid, it would follow that Sawyer would be discharged without the expense of a trial. Furthermore, the record of Sawyer's first trial discloses no motion addressed to the Court specifically asking for a speedy or early trial. The waiving of a jury and consenting to a trial before the Court although it would usually facilitate an earlier hearing, was not, in itself, a demand for a speedy trial, especially in view of the Court's action in sustaining the State's objection to the waiver of a jury. In Fowler v. Hunter, 10 Cir., 164 F.2d 668, 670, the Court said: "The demand for trial must be addressed to the court in which the indictment is pending (citing cases). Moreover, it has been held that the remedy of a person charged with a crime, who is not accorded a speedy trial, is to demand trial, and if the demand is not met, to apply to the proper appellate court for a writ of mandamus to compel trial (citing cases)."

In its opinion on the first appeal of the Sawyer case the Wisconsin Supreme Court used language which is somewhat confusing. The Court states, 263 Wis. 218, 224, 56 N.W.2d 811, 813: "While there may have been good reason for part of the delay in bringing the instant case on for trial, there would seem to be merit to defendant's contention that the delay from April 25, 1950 (the date of the return of the indictment) until April 15, 1952 (the date of the commencement of trial), did not comply with the constitutional provision requiring 'speedy trial'." Nevertheless, the Court thereafter stated: "We are of the opinion that the defendant, as a condition precedent to requesting dismissal of the criminal charge pending against him on the ground that he had been denied his constitutional right of a speedy trial, must first have taken some affirmative action demanding that the case be brought on

1. The Fifth Amendment of the United States Constitution is not directed to the states and applies only to offenses and trials under laws of the United States. United States ex rel. De Frates v. Ragen, 7 Cir., 181 F.2d 1001. The Fourteenth Amendment has not absorbed the first eight amendments as such. Wolf v. People of State of Colorado, 338 U.S. 25, 26, 69 S.Ct. 1359, 93 L.Ed. 1782; Adamson v. People of State of California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903.

for trial. This the defendant in the instant case did not at any time do."

It is apparent that the Court did not regard the incidental paragraph in the motion to dismiss, apparently never referred to again before or during the first trial, nor the consent filed by Sawyer to a trial before the Court, as sufficient affirmative action. Whether this Court agrees or disagrees with such conclusion makes no difference on this petition for habeas corpus.

■ Under federal case law the right to a speedy trial is relative and dependent upon surrounding circumstances. Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed 950; United States ex rel. Hanson v. Ragen, 7 Cir., 166 F.2d 608, 610. Here one of the causes of the delay was Sawyer's filing an affidavit of prejudice against the Municipal Judge. This necessitated calling in of an outside Circuit Judge. Such procedure often and usually results in a delay as the outside judge must adjust his own program and calendar to make available time for him to preside at a trial in Milwaukee.

There was no unseemly delay between Sawyer's first and second trials. The services of a judge from Racine were obtained. On the second appeal the Wisconsin Supreme Court stated, 266 Wis. 494, 63 N.W.2d 749, 751: "On this appeal Sawyer renews the contention which he made when the case was first before us, namely, that the judgment should be reversed and the indictment dismissed because the delay between the grand jury indictment, April 25, 1950, and his trial which began April 15, 1952, was so long that it denied him the right to a speedy trial as guaranteed by sec. 7, art. I, Wisconsin constitution and amendments V and XIV, United States constitution. This contention was considered and disposed of upon the first appeal, State v. Sawyer, supra, 263 Wis. at pages 223–225, 56 N.W.2d 811, and is now *res adjudicata.* The state and federal constitutions guarantee a right to a speedy, public trial but they do not compel one unless the person accused claims the right. The speedy trial is there for the asking but the person charged with crime is required to ask for it before he may complain that it has been denied him."

It would appear that the Wisconsin Supreme Court was in error in stating that in its first decision it had passed upon Sawyer's claim that his right to a speedy trial under the Federal Constitution had been violated. No mention was made in the Court's opinion of the Federal Constitution or of any of Sawyer's rights thereunder as far as a speedy trial was concerned. The Court's comments on that subject were confined to § 7, Art. I of the Wisconsin Constitution. However, Sawyer's rights under both the Federal and State Constitutions with reference to a speedy trial were considered in Sawyer's second trial, and in the second opinion of the Wisconsin Supreme Court. The question was stressed by Sawyer especially in the motion for rehearing which the Wisconsin Supreme Court denied.

A number of State court decisions are cited by petitioner, many of them construing provisions of State Constitutions, and a number of them decided before the days of crowded court dockets. Such decisions give us little help. This being a Federal Court, construing the provisions of the Federal Constitution, we must keep in mind the admonition of the United States Supreme Court that the right to a speedy trial is relative and depends upon surrounding circumstances. Beavers v. Haubert, supra.

■■ Such surrounding circumstances are—petitioner Sawyer was not confined to jail during the interval between indictment and trial; grounds urged by petitioner for dismissal of the charges against him were being tested out before the Wisconsin Supreme Court on the appeal of the Krause case; petitioner filed an affidavit of prejudice against the Municipal Judge, thus necessitating the calling in of an outside Circuit Judge; no specific demand was made to the *Court,* asking or demanding a speedy trial, and the filing of a consent to an immediate trial coupled with a waiver of a trial by

jury, not being sufficient for that purpose in view of the State objection, approved by the court, of a waiver of jury trial.

I conclude that a Writ of Habeas Corpus should not be granted on the basis that petitioner was deprived of due process of law under the 14th Amendment of the Federal Constitution because of his claim that he was deprived of a speedy trial.

### Knowing Use of Perjured Testimony

The remaining question is whether Sawyer was denied a fair and impartial trial guaranteed under the due process provision of the 14th Amendment to the Federal Constitution, by the knowing use by the State prosecutors of perjured testimony. The specific claim in this respect is that Krause's testimony on the trials of Sawyer to the effect that Sawyer paid him $3,000 in cash and gave him a discount of approximately $600 on the purchase of a Buick automobile, for the purpose of influencing his action as an alderman, was false; that the testimony from Krause was induced by the threats and promises of the State prosecutors; that the reckless use of this testimony was equivalent to the knowing use of perjured testimony and deprived Sawyer of a federal constitutional right.

It seems appropriate to set forth at this point a brief statement of the factual background and the setting in which the alleged bribe is claimed to have taken place. Walter J. Sawyer, the petitioner herein, was the principal stockholder and executive manager of Sawyer Downtown Motors, Inc. The corporation occupied a garage and salesroom on the north side of Wells Street between Sixth and Seventh Streets. Pursuant to a Civic Center plan, the City of Milwaukee acquired the Sawyer property as well as the balance of the property on the north side of Wells between Sixth and Seventh Streets. After 1947 the Sawyer corporation occupied the premises as a tenant of the city on a month to month basis. A map prepared by the City Engineer's office showed that the proposed widening of Wells Street would take fourteen feet off from the entire south or front end of the building. It was contemplated that all of the buildings on the north side of Wells between Sixth and Seventh Streets would be demolished. The Milwaukee Common Council had final control and authority over the plan. By the fall of 1948 the improvements had reached a stage which involved Wells Street near the Sawyer garage.

Krause was a friend and customer of Sawyer. On two previous occasions he had purchased automobiles from him. In May, 1948, he ordered a Buick and made a deposit of $100. Sawyer informed him that a delivery could not be made for some time. In September, 1948 Krause called at Sawyer's garage to inquire about prospects for obtaining delivery of his automobile. Krause testified that while he was at the garage Sawyer asked him whether the City planned to tear down the garage and that Krause said he would investigate. Krause later informed Sawyer that the city's schedule called for an early demolition of the Sawyer building. Krause testified further that Sawyer told him it would be worth $3,000 if he could stay at that location; that thereafter Krause made reports to Sawyer, talked to aldermen, attended meetings of the committee in charge of the Wells Street project, and became very active in Sawyer's behalf. Krause also testified that in the fall of 1948 he told Sawyer with reference to the automobile he had ordered "If I am going to do some work for you I am entitled to this particular discount because you have—you are not giving anything away, you are just giving it to me for cost." It is not disputed that when the automobile was delivered to Krause, the price charged was approximately $600 less than list price.

On December 29, 1948 notice was served on Sawyer by the city terminating the lease and requiring possession of the premises by March 31, 1949. However, in late January or early February this notice was cancelled.

Krause testified that Sawyer paid him $1,500 in cash shortly before April 25, 1949, and $1,500 additional before May, 24, 1949, and that such payments were

made pursuant to discussions and the agreement he had with Sawyer in September and early fall of 1948, and were for his influence as an alderman to prevent the demolition of the building where the Sawyer garage and sales room were located.

Testimony was given by Alderman McGuire that Sawyer admitted to him that he had paid Krause $3,000 but that later Sawyer attempted to qualify the admission by saying he meant "I gave him a $3,000 heap" referring to the automobile sold to Krause. There was also testimony from McGuire of a telephone conversation with Sawyer that Krause was to divide the $3,000 with two other aldermen.

With respect to the two payments of $1,500 Krause testified the payments were made in twenty dollar bills. The State introduced in evidence a check of $1,500 drawn by Sawyer on April 19, 1949 and another for $1,500 drawn May 18, 1949, which dates respectively were immediately prior to the payments made by Krause of notes given by him in payment of his automobile. These checks were drawn to the order of Sawyer's attorney, who was also a contractor, and were handled on Sawyer's books as payment for repairs to a parking lot. The attorney did not deposit these checks in his bank account but cashed them at the office of the County Treasurer. The Wisconsin Supreme Court, as to this transaction, stated, 266 Wis. 494, 505, 63 N.W. 2d 749, 755: " * * * The inference is plain that Geisenfeld cashed the fifteen hundred dollar checks as an accommodation to Sawyer and returned the cash to him and that was the money which Krause got from Sawyer a day or two later. The fictitious book entries were repeated as deductions in Sawyer's income tax returns."

Sawyer testified that the entire story of the cash bribe was false and that the sale of the automobile to Krause at a discount was merely based upon friendship, also because Sawyer did not have to pay a salesman's commission on that sale, and further, that in 1938 and 1940 before Krause was an alderman, Sawyer had also given him discounts on the purchase of automobiles.

Until about ten days before the first Sawyer trial Krause steadfastly denied he had ever received any money from Sawyer or that Sawyer had requested him to use his influence as an alderman in his behalf. He executed an affidavit to that effect on April 21, 1951. While Krause was at the state prison he told several inmates and guards that he had never received any money from Sawyer. However, special prosecutor Mount testified that he learned sometime during the month of March, 1952 that Krause would tell a story different than the one he had consistently told up to that time.

Prior to the first Sawyer trial Krause was brought to Milwaukee, and on April 7, 1952 conferred with the special prosecutor for the State. Upon his return to prison after the trial he stated that he had made a good deal and that he was well pleased with the deal he got in Milwaukee. It is evident that some understanding was reached either between Krause and the special prosecutor or between Krause's attorneys and Mount, for on the opening day of the first trial the State presented a previously prepared motion to *nolle* Counts 1 and 2 of indictment No. E 588. The Court granted the motion. The statutory formula required by § 325.34, Wisconsin Statutes, was complied with and the Court informed Krause that he was granted immunity as to those charges. On June 2, 1952, which was after the conclusion of the first Sawyer trial, the State *nolled* the three remaining bribery counts in indictment No. E 588. Furthermore, indictment No. E 480 contained two counts on the first of which Krause had been tried and convicted and by reason thereof, was serving a prison sentence in the state prison. Krause entered a plea of "Guilty" to the second count, and in a somewhat unusual procedure in State court practice, the judge suspended the imposition of sentence, a procedure recommended by the State prosecutor. Any other disposition of the charge would probably have resulted in

a denial of Krause's application for parole which was then pending. Thereafter, a parole was granted to Krause who, with permission of the State authorities, moved his residence to the State of California. He returned to Wisconsin to testify at the second trial.

■ One thing stands out clearly in this record. Krause was a perjurer. He swore falsely either when he executed the affidavit of April 21, 1951 or when he testified completely to the contrary on the two Sawyer trials. This was one of the issues submitted to the juries when the Sawyer trials were held. Krause's contrary affidavit of April 21, 1951 was before them. Likewise, on the second trial, there was received into evidence the testimony of a prison nurse and also a prison guard who had heard Krause first maintain that Sawyer was innocent, and then, after the first trial, tell about the good deal he made in Milwaukee. The juries were the sole judges of Krause's credibility. The record is such that they would have been justified, if they chose so to do, in rejecting all of Krause's testimony except where otherwise corroborated. Furthermore, in the second trial, the judge instructed the jury that in considering the weight to be given to Krause's testimony they should consider "Krause was promised that he himself would not be prosecuted." Nevertheless, each jury apparently believed that Krause was telling the truth when he testified at the trials.

The Wisconsin Supreme Court recognized that there were strong inducements for Krause to testify falsely. The Court said, State v. Sawyer, 266 Wis. 494, 501–502, 63 N.W.2d 749, 753:

"Much more serious are the inducements for Krause to commit perjury in order to accommodate the prosecution. At the time of the first trial Krause had already been convicted of accepting bribes in exchange for his influence as an alderman in the distribution of liquor licenses, State v. Krause, 1951, 260 Wis. 313, 50 N.W.2d 439, and he was serving the sentence then imposed in the state prison. He was also under indictment for his participation with Sawyer in the present alleged bribery and had pleaded not guilty and he had been indicted for five other offenses which had not yet come to trial. * * *

"There is not the slightest doubt that there were strong motives for Krause to testify in such a way as would please the prosecution even if the testimony did not conform to the fact. Counsel for appellant forcefully pointed out to this court what the motives were and attributed Krause's change of front to them. We cannot doubt that he was equally emphatic when he addressed the jury. Furthermore, the trial court instructed the jury that the witness' interest in the result of the trial may be considered in determining his credibility, that the evidence of an accomplice (naming Krause) should be examined with the utmost care and caution and the jury should also consider that Krause had been promised that he would not be prosecuted; also that the law assumes that a witness who has been convicted of a crime may not be as worthy of belief as a witness who has not and the jury may bear this in mind in determining his credibility and the weight to be given to his testimony. We think the jury was thoroughly informed that Krause's testimony was *prima facie* unreliable and if there was no other evidence than his against the defendant it would have been surprising indeed if the jury had convicted."

The Wisconsin court then proceeded to comment on other corroborating evidence, such as the testimony of McGuire and the book records and checks showing the two $1,500 payments to Sawyer's attorney just prior to the date when Krause testified he received two $1,500 payments from Sawyer.

■■ With two exceptions all of the testimony before me offered on behalf of petitioner, was considered by Wisconsin

State courts in the two jury trials, and upon the appeals to the Wisconsin Supreme Court. It should be emphasized that a habeas corpus proceeding in a Federal Court should not be used merely to give a defendant convicted in a State court, in a criminal case, a new trial before a Federal Court sitting without a jury. Habeas corpus cannot be utilized to correct mere errors of law committed in a trial in a State court or to try such questions as the sufficiency of the evidence to sustain a conviction. Meyers v. Welch, 4 Cir., 179 F.2d 707; Morton v. Steele, 8 Cir., 179 F.2d 956.

Federal District Courts are and should be reluctant to examine into cases involving the administration of State court criminal processes. There should be no unseemly interference by Federal District Courts with State Court criminal administration. Darr v. Burford, 339 U.S. 200, 217, 70 S.Ct. 587, 94 L.Ed. 761. It has been well said that for a District Court to determine whether state prisoners have been granted a fair trial in the State courts is a sensitive area in our federated system. United States ex rel. Smith v. Baldi, 3 Cir., 192 F.2d 540, 543. However, since the passage of the habeas corpus statute in 1867, Federal Courts were given jurisdiction to examine into alleged unconstitutional restraint by state power. Thus, there was created an area of potential conflict between State and Federal courts. Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587. Nevertheless, a Federal District Court should not shirk its duty to inquire, upon a showing being made of a *prima facie* case, whether in a criminal prosecution a state has so far departed from federal constitutional requirements as to justify a Federal Court's interference to protect the rights of the accused. Walker v. Johnston, 312 U.S. 275, 276, 61 S.Ct. 575, 85 L.Ed. 830; Hawk v. Olson, 326 U.S. 271, 279, 66 S.Ct. 116, 90 L.Ed. 61. It was Congress that decided that a District Judge may decide federal constitutional questions presented by a state prisoner even after his claims had been considered by the State courts.

This is not a case of a lower court sitting in judgment on a higher court. " * * * It is merely one aspect of respecting the Supremacy Clause of the Constitution whereby federal law is higher than State law. It is for Congress to designate the member in the hierarchy of the federal judiciary to express the higher law. * * * " Brown v. Allen, 344 U.S. 443, 510, 73 S.Ct. 397, 448, 97 L.Ed. 469 (opinion by Frankfurter, J.).

The obtaining of a conviction by a state by the knowing use of perjured testimony is a violation of due process of law as guaranteed by the 14th Amendment to the United States Constitution. Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791; Hysler v. State of Florida, 315 U.S. 411, 62 S.Ct. 688, 86 L.Ed. 932; United States v. Spadafora, 7 Cir., 200 F.2d 140. It is not enough that perjury be proved. In United States ex rel. Rooney v. Ragen, 7 Cir., 173 F.2d 668, 671, certiorari denied 337 U.S. 961, 69 S.Ct. 1524, 93 L.Ed. 1759, the Court said: "But assuming that Davidson committed perjury, there is no proof whatever that he did so with the knowledge and connivance of the prosecuting attorneys."

This habeas corpus proceeding is necessarily a collateral attack upon the judgment rendered by a State court and such a judgment cannot be lightly set aside. The burden of proof is, of course, on the petitioner. Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461; Hawk v. Olson, 326 U.S. 271, 278, 66 S.Ct. 116, 90 L.Ed. 61. In the Spadafora case the Court said, 200 F.2d at page 142: "But a defendant has the burden of making a showing, not only that material perjured testimony was used to convict him but that it was knowingly and intentionally used by the prosecuting authorities in order to do so."

One of the witnesses who testified in this Court, but did not testify in the trials in the State courts, was Paul Hemmy, Jr., an attorney residing at Juneau, Wisconsin. His testimony was received subject to the objection that

the information he received from Krause and about which he testified, was privileged. On February 2, 1952, Krause wrote to Hemmy asking him to come to the prison to discuss a "very important personal legal matter". On February 13, 1952, Hemmy conferred with Krause at the prison. It is clear that Krause consulted Hemmy professionally. Petitioner Sawyer urges that as Hemmy refused to undertake the mission suggested by Krause or to act as his attorney and did not accept a fee from him, the information given to Krause was not privileged, and could properly be received in evidence.

I hold that the information given to Hemmy by Krause was privileged, and absent a waiving of that privilege by Krause, should not be considered as evidence in this proceeding. Hemmy's testimony as to his conversation with Krause, and the information he received from Krause, together with the notation which Hemmy made on his office records on returning to his office from the prison, will be stricken as evidence in this case.

 The rule is well stated in 70 C.J. 406, Witnesses, § 547(b): "Where a person consults an attorney with a view of employing him professionally, any information acquired by the attorney in the course of interviews or negotiations looking toward such employment is privileged and cannot be disclosed, even though no actual employment of the attorney as such follows, * * * ".

 No claim is made that Krause ever consented to a disclosure by Hemmy. The applicable rule is stated in Robinson v. United States, 6 Cir., 144 F.2d 392, 405, affirmed 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944: "No citation of authority is needed to support the familiar and long established rule of law that an attorney cannot disclose communications made to him by his client without the client's consent, and Mrs. Woolet has not consented. It is beside the point that Joseph Hayes did not receive a fee or accept a retainer." The privilege is that of the client or prospective client alone, and only he may make the waiver. Hunt v. Blackburn, 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488.

The other witness presented by petitioner who did not testify at the State court trials was Verne Knoll, a former attorney and Krause's fellow prison inmate who had been sentenced on sixty-five counts for a minimum of twenty-seven years and a maximum of sixty-five years on charges of fraud, forgery and larceny as bailee. Undoubtedly, Krause discussed his troubles with Knoll on a number of occasions. The testimony of Knoll as well as that of Hemmy, as to the statements made by Krause, was received subject to the objection that it was hearsay. Insofar as Knoll testified that Krause protested his innocence in the Sawyer case up to a short time before the date of the first trial, it was entirely cumulative to testimony received on the trials, and would not, in itself, be a basis for the granting of a writ of habeas corpus. But Knoll testified to further statements which he claimed Krause made to the effect that Krause was willing to and did change his previous story because his parole application was pending and that he had to make parole, a compelling reason therefor being the illness of Krause's wife.

 This testimony was offered for the purpose of impeaching Krause's testimony given at each trial. Krause was not a witness in the proceedings before me, hence impeaching questions could not be propounded to him. It is a well settled principle of law that a witness cannot be discredited or his hostility or bias shown, by proving statements made by him outside the Court which do not harmonize with his statements on the witness stand until at least his attention has been specifically called to the former statements. Burton v. United States, 5 Cir., 175 F.2d 960, 965.

In Bridges v. Wixon, 326 U.S. 135, at page 153, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103, the court said: "The statements which O'Neil allegedly made were hearsay. We may assume they would be

admissible for purposes of impeachment. But they certainly would not be admissible in any criminal case as substantive evidence."

In United States v. Michener, 3 Cir., 152 F.2d 880 a footnote on page 885 reads: "Despite the weight of Wigmore's criticism to the contrary (3 Wigmore, Evidence, Sec. 1018(b)), the present state of the law limits the use of the prior inconsistent statements to discrediting the testimony in chief. The prior contradictory statements are not affirmative evidence of what they assert."

The United States Supreme Court in Southern Railway Co. v. Gray, 241 U.S. 333, 337, 36 S.Ct. 558, 560, 60 L.Ed. 1030 stated the rule as follows: "In an effort to discredit the passenger engineer, * * * he was asked on cross-examination concerning prior contradictory statements; but the exclusion of all or any part of his evidence would not change the result. Of course, the contradictory statements can have no legal tendency to establish the truth of their subject-matter."

An excellent review of the point under consideration appears in Ellis v. United States, 8 Cir., 138 F.2d 612, at page 616, where the Court said: "It does not follow, however that the admission by the witness, 'B' that she had formerly made, both orally and in writing, both informally and under oath, statements inconsistent with her testimony before the trial court may be received as substantive evidence of the facts indicative of the appellants' guilt asserted in the earlier statements. And we reject the contention of the appellee that it should be so received."

As the effort is here made to prove alleged perjury by statements made by Krause prior to the trial and not under oath, I would perhaps be justified in striking the testimony entirely. However, I have decided to permit it to remain in the record for whatever it is worth.

Special prosecutor Mount testified that he believed Krause was telling the true story when he gave his testimony at each trial. It is clear that Mount did not believe that Krause's testimony was perjured testimony. Hence, the petitioner fails to prove one of the essential elements, that is, the knowing use by the prosecuting attorneys of perjured testimony. Furthermore, although Krause did perjure himself either when he executed the affidavit of April 21, 1951 or when he testified at the trials, I cannot say from the record before me that the perjury occurred when Krause testified at the trials.

Knowing of the inconsistent versions given by Krause, two juries chose to believe his testimony on the trials. The Supreme Court of Wisconsin, although fully recognizing the strong inducements that Krause had to tell a story pleasing to the State, has, nevertheless, upheld the judgment of conviction.

I conclude that petitioner Sawyer has not met the burden of proof that is upon him to show that his conviction was accomplished by the knowing use of perjured testimony. I have heretofore given my reasons for concluding that petitioner's claim of a violation of his constitutional rights to a speedy trial cannot be sustained. It follows that the petition for a writ of habeas corpus must be dismissed.

Findings of Fact and Conclusions of Law will be prepared and filed promptly, after which an order will be entered remanding the petitioner to the custody of the Sheriff of Milwaukee County.