**Petition for Writ of Habeas Corpus for Walter J. SAWYER.**

**Walter J. SAWYER, Petitioner-Appellant,**

**v.**

**Max A. BARCZAK, Sheriff of Milwaukee County, Respondent-Appellee.**

**No. 11464.**

United States Court of Appeals Seventh Circuit.

Jan. 12, 1956.

Rehearing Denied March 1, 1956.

---

Carl R. Becker, Milwaukee, Wis., for appellant.

Herbert L. Mount, Milwaukee, Wis., Vernon W. Thomson, Atty. Gen. of Wisconsin, William J. McCauley, Milwaukee, Wis., William A. Platz, Asst. Atty. Gen. of Wisconsin, Harold J. McGrath, Sp. Asst. Dist. Atty., Milwaukee, Wis., for appellee.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from the trial court's denial of a petition for a writ of habeas corpus for release from state imprisonment.

The petitioner, Walter J. Sawyer, was an automobile dealer in the City of Milwaukee, Wisconsin. His garage was located on property to which the city had taken title in order to widen the street on which the garage faced. The project as originally proposed called for the destruction of the Sawyer garage. The plan was eventually changed so that the block in which Sawyer's garage is located was widened on one side only, thereby allowing the garage to remain standing. As a result the street is narrower in that section of the block than elsewhere, and the streetcar tracks are eight feet off center.

Sawyer was charged with having bribed Albert Krause, a Milwaukee alderman, to use his influence in having the plan changed so that the Sawyer garage would not be destroyed. Sawyer was indicted under Section 346.06 of the Wisconsin Statutes; he was tried and convicted. This conviction was reversed and remanded by the Wisconsin Supreme Court because a copy of the prosecutor's notes used on oral argument was inadvertently included in the exhibits which were sent to the jury room. State v. Sawyer, 263 Wis. 218, 56 N.W.2d 811.

On a second trial Sawyer was again found guilty, and this conviction was affirmed. State v. Sawyer, 266 Wis. 494, 63 N.W.2d 749.

Sawyer then filed his petition for a writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin. In this petition Sawyer claimed that he had been denied his right to due process of law given him by the Fourteenth Amendment because he had not received a "speedy trial," and because the prosecutor had knowingly induced perjury on the part of Krause, the alderman whom Sawyer allegedly bribed. A hearing was granted on the petition to determine whether or not the petitioner's Constitutional rights had been denied. The District Court found against petitioner and dismissed the writ. Sawyer filed his notice of appeal and the District Judge issued a certificate of probable cause pursuant to 28 U.S.C.A. § 2253.

The petitioner relies on several alleged errors in the court below. First he claims that the trial judge erred in striking and refusing to consider the testimony of witness Paul A. Hemmy, an attorney whom the witness Krause had consulted. Krause, the alderman whom Sawyer was accused of bribing, had been convicted of accepting bribes on other occasions. At the time of the Sawyer trial Krause was serving a term in the Wisconsin State Prison for having accepted a bribe. There were other charges pending against Krause, including the charge of having accepted the bribe from Sawyer. Krause was anxious to have the other charges against him dismissed because of the effect they might have on his application for parole.

Shortly before the first Sawyer trial Krause wrote a letter to Attorney Hemmy and asked Hemmy to visit him in prison. Hemmy testified below that Krause told him that he had not received money from Sawyer, and that Sawyer had never asked him to use his influence in altering the street widening plan. But Krause said that if Hemmy could get the prosecutor to dismiss the remaining charges against him, he would testify

that he accepted a bribe from Sawyer. Hemmy refused to have anything to do with the plan, but he did make a note on the inside of a file cover about what Krause had said during their talk. All this was heard and examined by the trial judge subject to the respondent's objection that it was inadmissible both as hearsay and as a privileged disclosure made by a client to his attorney. After hearing all of Hemmy's testimony the District Judge ruled that it was a privileged communication between client and attorney and was not admissible. The District Judge, therefore, refused to consider it in making his decisions as to the facts. We think that in this ruling the trial court erred.

The attorney-client privilege has never prevented the disclosure of communications made in furtherance of a crime. Alexander v. United States, 138 U.S. 353, 11 S.Ct. 350, 34 L.Ed. 954; Pollock v. United States, 5 Cir., 202 F.2d 281. In both these cases, however, the communications were admitted in the client's trial for the crime in furtherance of which they were made. In fact, the Alexander case expressed as dicta the opinion that the rule should be limited to trials for the crime in furtherance of which the communication was made. This suggestion has not been followed by trial courts, however. A. B. Dick Co. v. Marr, D.C., 95 F.Supp. 83, 102; Securities and Exchange Commission v. Harrison, D.C., 80 F.Supp. 226, 230–231. Wisconsin, too, has recognized this limitation on the privilege in all cases and not just in the client's criminal trial. In Dunn v. Amos, 14 Wis. 106, the plaintiff sought to set aside a fraudulently drawn deed; the court held that the testimony of the attorney who had drawn the deed was admissible against the client.

Wigmore approves this exception to the privilege in both criminal and civil cases and quotes the celebrated English case, Annesley v. Earl of Anglesea, 17 How St.Tr. 1229, in support of the position.

"Mounteney, B.: For God's sake then let us consider, what will be the consequence of the doctrine now laid down and so earnestly contended for, that such a declaration made by any person to his attorney ought not by that attorney to be proved? A man (without any natural call to it) promotes a prosecution against another for a capital offense [this was the actual circumstance in this case]; he is desirous and determined, at all events, to get him hanged; he retains an attorney to carry on the prosecution, and makes such a declaration to him as I have before mentioned (the meaning and intention of which, if the attorney hath common understanding about him, it is impossible he should mistake); he happens to be too honest a man to engage in such an affair; he declines the prosecution; but he must never discover this declaration; because he was retained as attorney. This prosecutor applies in the same manner to a second, a third, and so on, who still refuse, but are still to keep this inviolably secret. At last, he finds an attorney wicked enough to carry this iniquitous scheme into execution. And after all, none of these persons are to be admitted to prove this, *in order either to bring the guilty party to condign punishment, or to prevent the evil consequences of his crime with regard to civil property.* Is this law? Is this reason? I think it is absolutely contrary to both * * *." 8 Wigmore on Evidence, § 2298, p. 577 (3d ed. 1940). (Emphasis added.)

For additional authority see: In re Cole, Fed.Cas.No.2,975, 8 Rep. 105; Kaufman v. United States, 2 Cir., 212 F. 613; Fuston v. United States, 9 Cir., 22 F.2d 66; United States v. Bob, 2 Cir., 106 F.2d 37, 125 A.L.R. 502, certiorari denied 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493.

The lone dictum in the Alexander case notwithstanding, we think that the rule accepted by all courts today is that a client's communication to his attorney in pursuit of a criminal or fraudulent act yet to be performed is not privileged in

any judicial proceeding. As Judge Medina said in A. B. Dick Co. v. Marr, supra:

"Nevertheless, it is quite clear that the privilege disappears if it is invoked merely to cloak a fraudulent scheme, and that when a client consults an attorney as to how to concoct or perpetrate a fraud the privilege is unavailing." 95 F.Supp. at page 102.

There can be no doubt that Krause's communication as related in court by his attorney, Hemmy, was on its face fraudulent and an attempt to have the lawyer assist him in the commission of a crime. Krause said that he did not receive any money from Sawyer, but that he would testify that he did if Hemmy could make a deal with the prosecutor to have the remaining charges against him dismissed.

■ Hemmy's testimony was not hearsay. Sawyer was only trying to prove the proposition that Krause made to Hemmy. Hemmy heard the statements directly from Krause. 31 C.J.S., Evidence, § 192, gives a good capsule definition of hearsay evidence: "Evidence is hearsay when its probative force depends on the competency and credibility of some person other than the witness." If Krause had told Hemmy of some objective occurrence he had observed, Hemmy's testimony of what Krause had said would be hearsay if offered to prove the occurrence Krause had observed. But when offered to prove only what he heard Krause say, Hemmy's testimony is not hearsay.

■■ The court below should have admitted the testimony of Hemmy, and considered it in its determination of facts. But the appellant has not shown that he was prejudiced by the exclusion of this evidence. Of course, harmless error is not grounds for reversal, and the appellant has both the burden of proving error and of showing that he was prejudiced thereby. Yazoo & M. V. R. Co. v. Mullins, 249 U.S. 531, 39 S.Ct. 368, 63 L.Ed. 754; McGivern v. Northern Pac. R. Co., 8 Cir., 132 F.2d 213, 216; Jennings v. United States, 5 Cir., 73 F.2d

470; Marin v. Ellis, 8 Cir., 15 F.2d 321, 322; Parker v. Elgin, 6 Cir., 5 F.2d 562, 564. Contra: Inman Bros. v. Dudley & Daniels Lumber Co., 6 Cir., 146 F. 449; Westall v. Osborne, 2 Cir., 115 F. 282.

■ Hemmy's testimony was offered as tending to show perjury by the witness Krause in both trials in the state court. As the trial court pointed out, Petition of Sawyer, D.C., 129 F.Supp. 687, 696. Sawyer's Federal Constitutional rights were not denied unless perjured testimony was introduced with the knowledge of the prosecutor that it was perjured. United States v. Spadafora, 7 Cir., 200 F.2d 140; United States ex rel. Rooney v. Ragen, 7 Cir., 173 F.2d 668; Cobb v. Hunter, 10 Cir., 167 F.2d 888. The District Judge found: " * * * It is clear that [Special Prosecutor] Mount did not believe that Krause's testimony was perjured testimony. * * * I cannot say from the record before me that the perjury occurred when Krause testified at the trials." 129 F.Supp. at page 698. Unless we are convinced by the record as a whole that the District Court's acceptance of Hemmy's testimony could have changed this finding, we are not justified in reversing the judgment because of its exclusion.

Hemmy's testimony certainly could not be said to tend to establish the prosecutor's knowing use of perjured testimony. There was evidence, admitted by the District Judge, that went much more directly to that question. Carl Breitlow, a male nurse at the prison hospital where Krause worked during his prison term, testified that he had heard Krause say that he had received nothing from Sawyer; that Krause had said that he had been called to Milwaukee to see the prosecutor in the Sawyer case and that upon his return he heard him say that he was very pleased with the deal he had made there. Breitlow also testified that he heard Krause explain the fact that he made this deal by saying that he had to get out of prison as soon as possible because of his wife's poor health. There is no question that the District Judge believed Breitlow's testimony.

In his published opinion the trial judge said:

"Prior to the first Sawyer trial Krause was brought to Milwaukee, and on April 7, 1952, conferred with the special prosecutor for the State. Upon his return to prison after the trial he stated that he had made a good deal and that he was well pleased with the deal he got in Milwaukee. It is evident that some understanding was reached either between Krause and the special prosecutor or between Krause's attorneys and Mount * * *." Petition of Sawyer, D.C., 129 F.Supp. 687, 694.

Hemmy's testimony could not prove anything more than was shown by Breitlow's testimony and declared by the trial judge to be true. The question on which the court below found the evidence insufficient is the necessity of showing the prosecutor's knowledge that Krause's testimony was perjured. Hemmy's testimony, at most, would tend to show that Krause was willing to give perjured testimony. If allowance of the writ was dependent upon the court's believing what Hemmy said, then the exclusion of his testimony would have been prejudicial. But the court did believe that Hemmy gave a true account of what Krause had told him. What the lower court did not believe was that Krause was telling the whole truth when he talked to Hemmy, Breitlow, or any of the other witnesses.

Krause's credibility had been thoroughly considered by the state courts before the petitioner came to the Federal District Court on collateral attack. When he appealed his second conviction to the Supreme Court of Wisconsin, Sawyer also contended that as a matter of law he was entitled to judgment dismissing the indictment because the principal witness against him (Krause) was unworthy of belief; that the state's evidence was incredible; and that reasonable doubt of his (Sawyer's) guilt must exist in spite of such evidence. In its opinion, State v. Sawyer, 266 Wis. 494, 63 N.W.2d 749, the Wisconsin Supreme Court, after reviewing the evidence, and after noting the contradictions between Krause's testimony and his prior statements out of court, the inducements for Krause to commit perjury and the strong motives for him to give testimony to please the prosecution even if the testimony were false, pointed out that the trial court had instructed the jury that Krause's interest in the result of the trial might be considered in determining his credibility, that Krause's testimony as an accomplice should be examined with the utmost care and caution, and that the jury should also consider that Krause had been promised that he would not be further prosecuted. After reciting all of these facts, the State Supreme Court said, 63 N.W.2d at page 754: "We think the jury was thoroughly informed that Krause's testimony was *prima facie* unreliable * * *." But the Wisconsin Supreme Court then pointed out in detail the mass of other evidence which corroborated Krause's testimony against Sawyer that the alleged bribe was given and accepted. The court there held that there was sufficient evidence to support the verdict of the jury that Sawyer was guilty as charged in the indictment.

The Supreme Court of the United States denied Sawyer's petition for certiorari, 348 U.S. 855, 75 S.Ct. 80, 99 L.Ed. 674, and his request for a rehearing on that petition. 348 U.S. 890, 75 S.Ct. 205.

█ █ From the entire record we find the trial court's attitude toward Krause's changing stories very reasonable. It was certainly to Krause's benefit to deny guilt in the Sawyer matter, and he may well have thought that it would be to his benefit to hold out for as much as he could get before telling the truth. This is what the evidence, including the excluded testimony, tended to show. But it did not prove that the prosecutor knew, or should have known, that Krause's testimony was false. The exclusion of Hemmy's testimony in the habeas corpus proceeding is not prejudicial error because it was merely cumulative, and supported

rather than contradicted the lower court's findings.

The above reasoning applies as well to the testimony of Knoll. Knoll was a fellow prisoner of Krause's, and testified in the court below that he had heard Krause say many times that he did not take a bribe from Sawyer. He also testified that Krause had strong reasons for wanting to get out of prison as soon as possible. The court below ruled that Knoll's testimony was purely cumulative to testimony heard at the Sawyer trial showing that Krause had protested his innocence until shortly before he testified to the contrary. The court concluded that such testimony alone did not furnish a basis for granting the writ. This conclusion was obviously correct.

■ The appellant contends that the lower court erred in not finding from the evidence that the prosecutor was guilty of misconduct in inducing Krause to testify falsely and thereby denied Sawyer his Constitutional rights. In discussing the lower court's rulings on the admissibility of evidence we have reviewed the strongest evidence which the appellant claims proves misconduct by the prosecutor. Our conclusion, above, that the evidence supports the court's finding that the prosecutor thought that Krause told the truth at Sawyer's trials, answers this contention. As the lower court pointed out, all of the issues of fact before it were involved in the two Sawyer trials. Both juries believed that Krause was telling the truth and no amount of merely additional evidence of the same kind justifies a reversal of that verdict on a collateral attack.

Sawyer also argues that the court below erred in holding that he was not deprived of due process of law under the Fourteenth Amendment because he failed to receive a "speedy trial."

On appeal from his first conviction the Supreme Court of Wisconsin found no merit in Sawyer's contention that he had not been given a speedy trial as required by Section 7 of Article I of the Wisconsin Constitution and that he was not entitled to a dismissal of the indictment on that ground. On this question the Supreme Court of Wisconsin said: "We are of the opinion that the defendant, as a condition precedent to requesting dismissal of the criminal charge pending against him on the ground that he has been denied his constitutional right of a speedy trial, must first have taken some affirmative action demanding that the case be brought on for trial. This the defendant in the instant case did not at any time do." 263 Wis. 218, 56 N.W.2d 811, 814. However, Sawyer's first conviction was reversed and remanded by the Wisconsin Supreme Court because a copy of the prosecutor's notes for his oral argument was inadvertently included in the exhibits which were sent to the jury room. State v. Sawyer, 263 Wis. 218, 56 N.W.2d 811.

On his second trial the jury again found Sawyer guilty, and on his appeal from that judgment Sawyer again presented the argument that he had been denied a speedy trial in violation of both the State and Federal Constitutions. But the Supreme Court of Wisconsin, after pointing out that Sawyer had been free on bail since immediately after his arrest on the indictment and that he not only made no demand for trial but acquiesced in such delay as there was, concluded for the second time that "Sawyer was not deprived of a constitutional right."

■ ■ The trial court was correct in holding that Sawyer was not denied rights given him by the Constitution because of any delay in bringing him to trial. It is clear that the Federal Constitution does not give an absolute right to a "speedy trial" as such to persons tried in state courts. The Constitutional right to a "speedy trial" is contained in the Sixth Amendment. It is common knowledge that the first ten amendments do not apply to state tribunals and that the Fourteenth Amendment, which does apply to the states, does not necessarily include all of the first ten. Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782; Adamson v. People of State of California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903.

Before we can order the release of a state prisoner for failure to obtain a "speedy trial," we must be convinced that the failure resulted in the taking of the prisoner's liberty or property without due process of law.

■ The right to a speedy trial is relative and must always be judged by the surrounding circumstances. Beavers v. Haubert, 198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950; United States ex rel. Hanson v. Ragen, 7 Cir., 166 F.2d 608. Under the circumstances shown by the record in this case the delay in bringing Sawyer to trial was not so unreasonable as to contravene his Constitutional rights.

The record shows that Sawyer was indicted on April 25, 1950, and the following day was released on bail. He has been at liberty on bail ever since, so that the delay in bringing him to trial has not resulted in any additional imprisonment.

Sawyer was arraigned on May 5, 1951, more than a year after he was indicted. This is not an unreasonable amount of time considering the fact that Sawyer filed an affidavit of prejudice against the Municipal Judge necessitating the appointment of a special judge, and the fact that Sawyer twice moved to dismiss the indictment listing sixteen grounds.

The state elected to try Krause first on charges that did not involve Sawyer. Krause was convicted and appealed to the Supreme Court of Wisconsin. His principal argument on appeal was that the grand jury, which had indicted both him and Sawyer, had been unlawfully constituted. If the court had upset Krause's indictment, it would have upset Sawyer's as well. It was only reasonable for the state to wait until the validity of the grand jury's action had been determined by the Supreme Court of Wisconsin before going to trial with the Sawyer case.

The only request for extra time made by the state was made on June 5, 1951, when it decided to try Krause first and Sawyer later. This delay was reasonable since the prosecutor could not try them both at the same time, and Krause had been indicted first.

■ Not only has Sawyer failed to show that the delay in bringing him to trial was unreasonable, but also he failed to ask the court before which his case was pending for an immediate trial. Acquiescence in the delay, by failing to ask the court for immediate trial, waives the right to speedy trial. Miller v. Overholser, 92 U.S.App.D.C. 110, 206 F.2d 415; Fowler v. Hunter, 10 Cir., 164 F.2d 668; Shepherd v. United States, 8 Cir., 163 F.2d 974; United States v. Albrecht, 7 Cir., 25 F.2d 93. Also see Annotation 129 A.L.R. 572.

Since it involves no prejudicial error, the judgment of the District Court is

Affirmed.