**Asa Hurrial MINOR, Jr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18408.**

United States Court of Appeals Eighth Circuit.

March 13, 1967.

Rehearing Denied April 21, 1967.

Heaney, Circuit Judge, dissented.

John W. Walker, Little Rock, Ark., for appellant and filed brief.

Lindsey J. Fairley, Asst. U. S. Atty., Little Rock, Ark., for appellee and filed brief with Robert D. Smith, Jr., U. S. Atty., Little Rock, Ark.

Before VAN OOSTERHOUT, GIBSON and HEANEY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by the defendant Asa Hurrial Minor, Jr., from his conviction by a jury on Count II of an indictment charging him with the transportation of a specifically described Chevrolet automobile in interstate commerce from Indiana to Arkansas, knowing said motor ve-

hicle to have been stolen in violation of 18 U.S.C.A. § 2312. Defendant was sentenced to two years imprisonment. The court on its own motion dismissed Count I of the indictment which charged interstate transportation of another automobile upon the ground that proof that such automobile was stolen was insufficient.

Defendant represented himself in the trial court. His right to counsel, including right to court-appointed counsel without expense to him, was fully explained. Defendant persistently declined counsel and insisted upon representing himself. The court just prior to the opening of the trial again offered to provide counsel. Defendant has not, either in the trial or here, raised the issue that he has been deprived of his constitutional right to be represented by counsel. He is represented on this appeal by competent counsel and raises no brief point that his waiver of counsel in the trial court was not knowingly and intelligently made, nor does he in any way intimate or suggest that he has been wrongly deprived of his constitutional right to counsel. Hence, the issue of denial to defendant of his right of counsel is not now before us.

Defendant urges he is entitled to a reversal for the following reasons: (1) Insufficiency of the evidence to support the guilty verdict. (2) Admission of prejudicial evidence and failure to give instruction limiting the consideration of such evidence. (3) The jury was unconstitutionally selected.

■ None of the errors here asserted was raised in the trial court. No motion for acquittal was made; no objection was made to any evidence offered; no exception to or request for instructions was made and there was no challenge to the jury panel. Thus absent a plain error situation, there is nothing before us for review. "A trial judge ordinarily should not be held to have erred in not deciding correctly a question that he was never asked to decide." Page v. United States, 8 Cir., 282 F.2d 807, 810; Petschl v. United States, 8 Cir., 369 F.2d 769.

■ Defendant attempts to excuse his failure to preserve errors here asserted by a contention that he is unskilled and unknowledgeable in the law. It is well settled that the right to counsel may be waived as long as the waiver is knowingly and intelligently made. Moore v. State of Michigan, 355 U.S. 155, 161, 78 S.Ct. 191, 2 L.Ed.2d 167; Carter v. People of State of Illinois, 329 U.S. 173, 177, 67 S.Ct. 216, 91 L.Ed. 172; Johnson v. Zerbst, 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed. 1461.

■ The Constitution does not force an unwanted attorney upon a defendant. Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268; United States v. Washington, 3 Cir., 341 F.2d 277, 285. The accused may before trial elect to conduct his own defense. Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356; United States ex rel. Maldonado v. Denno, 2 Cir., 348 F.2d 12, 15; Johnson v. United States, 8 Cir., 318 F.2d 855, 856; Butler v. United States, 8 Cir., 317 F.2d 249, 258. However, as aptly stated by the Court of Appeals for the Fifth Circuit: "Once it is found * * * that such an accused has properly waived his right to counsel, the effects flowing from that decision must be accepted by him, together with the benefits which he presumably sought to obtain therefrom." Smith v. United States, 5 Cir., 216 F.2d 724, 727. Thus, when accused elects to waive his constitutionally guaranteed right of counsel, he does so at his own risk and must accept the consequences of his action. United States v. Redfield, D.C.Nev., 197 F.Supp. 559, 572, affirmed on the basis of the trial court's opinion, 9 Cir., 295 F.2d 249.

Sound policies of judicial administration as prescribed by the Rules of Criminal Procedure should apply to all trials whether conducted by counsel or by a defendant. Otherwise, defendant would in practical effect be given two trials, one in which he conducts his own defense and if unsuccessful, another trial with representation by counsel.

■ In the event the trial results in a clear miscarriage of justice, the 52(b) plain error rule affords a defendant representing himself all of the protection to which he is justly entitled when he has knowingly and intelligently elected to waive counsel and has deliberately chosen to act as his own attorney.

A careful examination of the record shows that no plain error has been committed and that defendant has had in all respects a fair trial. Defendant by representing himself secured many advantages that would not have been available to him had he been represented by counsel. Defendant was permitted to testify in narrative form and was permitted to say everything that he desired to without restriction. He made his own opening statement to the jury, his own closing argument, and he was allowed to supplement his argument after the court had instructed the jury. Defendant cross-examined the witnesses and was given much more freedom than would have been afforded counsel. As heretofore pointed out, the court on its own motion at the close of the Government's case dismissed Count I and advised the defendant that he would not have to meet such charge. On several occasions, the court restricted the Government's testimony on its own motion. The instructions given are simple, easily understood and fair.

■ Resort to the plain error rule is appropriate only in exceptional cases where such course is necessary to prevent a clear miscarriage of justice. Petschl v. United States, supra; Page v. United States, supra; Johnson v. United States, 8 Cir., 362 F.2d 43, 46; West v. United States, 8 Cir., 359 F.2d 50, 53; Gendron v. United States, 8 Cir., 295 F.2d 897, 902.

We find no plain error requiring a reversal has been committed and affirm the conviction.

■ The evidence is clearly sufficient to support the guilty verdict. Title 18 U.S.C.A. § 2312 reads: "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

There is direct proof from the owner that the precise car involved in this offense was stolen from the Placke Chevrolet Company in St. Louis, Missouri, on September 24, 1964, and was reported stolen to the police at 7:30 p. m. on that date. The invoice of the manufacturer to the Placke Chevrolet Company showing ownership of the car in such company was introduced. After the car was recovered by the authorities, it was returned to such owner. Such evidence is not contradicted. Defendant himself stated to the jury, "I believe this vehicle was stolen on the 24th of September. I came into acquisition of it about one month later."

Defendant specifically admitted that he transported the car from Indiana to Arkansas where it was recovered. Thus the only element of the offense with respect to which any dispute exists is whether defendant knew the automobile was stolen at the time he transported it to Arkansas.

■ The court in an instruction to the jury, not excepted to and not asserted to be error upon this appeal, told the jury:

"Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew that the property had been stolen, * * * "

The foregoing instruction contains a proper statement of the applicable law. Lee v. United States, 8 Cir., 363 F.2d 469, 474; Cloud v. United States, 8 Cir., 361 F.2d 627, 629; Harding v. United States, 8 Cir., 337 F.2d 254, 257.

As we point out in Harding, supra, the instruction here given differs materially from the supplemental instruction in Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350, relied upon by the defendant.

Defendant's defense is based upon his testimony that he was holding the car as security for a loan to Ellsworth Turner. He said that he had a chattel mortgage on the car but produced no evidence to prove that he did. The jury was not compelled to accept defendant's uncorroborated explanation of his possession of the car.

Defendant's contention that plain error was committed in receiving certain evidence, not objected to, is without merit. Defendant went to trial on a two-count indictment charging two transportation offenses involving separate stolen automobiles. Such counts were properly joined in the same indictment under Rule 8, Fed.R.Crim.P., and no Rule 14 request for severance was made. Trial upon all counts of indictments such as this is the usual procedure. While Count I was before the jury, some evidence was introduced with respect to the stealing of the car there involved and the registration and transportation thereof. The transactions involved in each of the counts were closely related. Both cars were discovered at the same place and at the same time. The evidence offered was competent to support Count I at the time it was offered. Count I was subsequently dismissed by the court on its own motion. The defendant has failed to demonstrate that any prejudicial error was committed in the reception of such evidence.

There is some hearsay testimony as to reports received by officers that the cars were stolen and that the license number and registration certificate on the Chevrolet did not pertain to the car involved in Count II but was issued for a 1950 Chevrolet owned by the defendant. No plain error was demonstrated. Such evidence is merely cumulative. The theft is shown by the direct testimony of the owner and the registration is shown by the license bureau officer's testimony. Complaint is also made of receiving evidence as to registration from the registration official without the introduction of the exhibits. The exhibits were in court. If objection had been made, the exhibits could have been readily identified and introduced. Defendant could also have introduced the exhibits.

The Government made out a prima facie case by showing defendant's admitted possession of recently stolen property. The registration evidence was not essential to the Government's case. In any event, such evidence was not prejudicial.

Defendant's final contention that the jury was not selected in a constitutional manner, in that the panel does not represent a fair cross section of the community, is not supported by the record. No challenge was made nor was any evidence offered in support thereof in the trial court. All we have before us is an attachment to defendant's brief showing a list of jurors called to serve on October 17, 1966, and purporting to list the occupations of most of such jurors. This is not the jury that tried the defendant. He was tried on April 5, 1966.

We are satisfied that there is no record support for defendant's contention. Even if the list submitted on appeal is considered, it falls far short of meeting the burden resting upon the defendant to show that the jury which convicted him was improperly constituted.

We hold that none of the errors asserted upon this appeal were properly raised in the trial court and that none of the errors urged constitute plain error under Rule 52(b). The defendant has had in all respects a fair trial.

The judgment of conviction is affirmed.

HEANEY, Circuit Judge (dissenting).

Defendant Asa Minor, Jr., was charged by indictment February 14, 1966, in two counts. Count I charged that on or about October 1, 1964, he transported in interstate commerce a stolen 1964 Thunderbird automobile from Gary, Indiana, to Grady, Arkansas. Count II charged that on or about January 1, 1965, the defendant transported in interstate commerce a

stolen 1964 Chevrolet from Gary, Indiana, to Pine Bluff, Arkansas. Each count alleged the defendant knew that the automobiles were stolen.

The defendant, who represented himself, was tried by jury April 5, 1966, and was found guilty on the second count.

The trial judge permitted extensive hearsay testimony to be introduced which tended to establish that the Thunderbird automobile had also been stolen, and that the defendant had come into possession of the automobile a short time after the theft. At the close of the Government's case, the trial judge dismissed this count on the ground that no competent evidence had been introduced to show that the Thunderbird, in fact, had been stolen.

The court imposed a two-year sentence on the defendant who appeals to this Court urging a reversal for the following reasons: (1) Insufficiency of the evidence to support the guilty verdict. (2) Admission of prejudicial evidence and failure to give instruction limiting the consideration of such evidence. (3) The jury was unconstitutionally selected.

I concur with the majority opinion insofar as it relates to defendant's contentions that the jury was unconstitutionally selected. I respectfully dissent, however, on the grounds that the defendant did not voluntarily waive his constitutional rights to be represented by counsel, and that incompetent testimony, highly prejudicial to defendant, was received in evidence.

While no specific contention is made upon this appeal that the counsel was not knowingly and intelligently waived,[1] the defendant asserts that he ought to be excused for his failure to preserve errors in the trial court on the ground that he is unskilled and unknowledgeable in the law. While my colleagues hold that the issue of waiver is not now before us, thus preserving defendant's rights in this regard, they point out that the defendant cannot be excused for failing to preserve errors as he was advised of and waived his right to counsel. Under these circumstances and in view of the fact that the defendant has the right to raise the issue in a subsequent habeas corpus petition or in a proceeding under

1. The Sixth Amendment of the Constitution provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence." See also Rule 44, Federal Rules of Criminal Procedure; Johnson v. Zerbst, 304 U.S. 458, 462–463, 58 S.Ct. 1019, (1938), where the Court stated:

"* * * The Sixth Amendment guarantees that 'In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.' This is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. Omitted from the Constitution as originally adopted, provisions of this and other Amendments were submitted by the first Congress convened under that Constitution as essential barriers against arbitrary or unjust deprivation of human rights. The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer—to the untrained laymen —may appear intricate, complex and mysterious. Consistently with the wise policy of the Sixth Amendment and other parts of our fundamental charter, this Court has pointed to ' * * * the humane policy of the modern criminal law * * * ' which now provides that a defendant * * * if he be poor, * * * may have counsel furnished him by the state * * * not infrequently * * * more able than the attorney for the state."

28 U.S.C.A. § 2255,[2] I feel that the issue should be resolved in this proceeding.

The following colloquy was recorded with reference to the defendant's right to counsel and his waiver thereof:

"The Court: Are you ready, Mr. Minor?

"The Defendant: Yes, sir.

"The Court: All right. Now, Mr. Minor, come around to that speaker please. (The defendant came close to the Bench.) Now, you have no lawyer?

"The Defendant: That's right. I have no lawyer.

"The Court: You indicated that you did not wish to have a lawyer?

"The Defendant: True.

"The Court: And the Court offered to appoint you one, is that right?

"The Defendant: Yes, sir.

"The Court: Will you sign another waiver, please, Mr. Minor?

"(The Defendant executed the document waiving his right to have counsel.)

\*   \*   \*   \*   \*   \*

" \*   \*   \* Now, I previously, in chambers, discussed with Mr. Minor and the Clerk and the United States Attorney about—I explained particularly to Mr. Minor—about his right to challenge jurors, certain jurors. Ascertain from him, Mr. Cole, if he has any jurors he wishes to challenge.

"(The Clerk conferred with Mr. Minor.)

"The Clerk: Your Honor, he doesn't desire to strike.

\*   \*   \*   \*   \*   \*

"(At this time, a jury was empaneled to try the case.)

"The Court: Now, Members of the Jury, as in the last case, the defendant does not have a lawyer. He desires to represent himself. He has a right to do it. There are always some problems about that because the defendant is not learned in the law, *but the Court, as well as the United States Attorney, will see to it that his rights are protected. We want him to have just as fair and complete a trial as if he had a lawyer.* \*   \*   \*" [3] (Emphasis added.)

The above record indicates that the trial court did little more than offer to appoint counsel and to accept a waiver. The Supreme Court, in Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L. Ed. 309 (1948), held a similar procedure to be insufficient to establish a meaningful waiver. It then defined the responsibilities of the trial court:

" 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the

---

**2.** "Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with his constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court—as the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. \*   \*   \*" Johnson v. Zerbst, supra, at 467, 58 S.Ct. at 1024.

The Court, in *Johnson*, specifically held that even though this issue was not raised at trial, it could be raised in a habeas corpus proceeding.

**3.** Before the defendant took the stand, the court advised him of his right not to testify against himself.

serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's ·responsibility. To be valid such *waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof,* and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." Id. at 723, 68 S.Ct. at 323. (Emphasis added.)

See also Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 839 (1927); United States v. Washington, 341 F.2d 277 (3rd Cir. 1965); United States v. Cariola, 323 F.2d 180, 186 (3rd Cir. 1963); United States v. Lester, 247 F.2d 496, 499–500 (2nd Cir. 1957); Snell v. United States, 174 F.2d 580 (10th Cir. 1949); People v. Kemp, 55 Cal.2d 458, 11 Cal.Rptr. 361, 359 P.2d 913 (1961); Commonwealth ex rel. McCray v. Rundle, 415 Pa. 65, 202 A.2d 303 (1964); State ex rel. Burnett v. Burke, 22 Wis.2d 486, 126 N.W.2d 91 (1964); People v. Chesser, 29 Cal.2d 815, 823, 178 P.2d 761, 765 (1947).

The Supreme Court has repeatedly pointed out that it will indulge every reasonable presumption against waiver of fundamental constitutional rights; and while the accused may waive his right to counsel, the trial court should determine whether there is a proper waiver, and that determination should appear in the record. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019 (1938). See Annot., 9 L.Ed.2d 1260 (1963); Annot., 2 L.Ed.2d 1644 (1958); Annot., 93 L.Ed. 137 (1950); 4 Barron, Federal Practice and Procedure, Rules Edition, § 2461 (1951); Note, 49 Minn. L.Rev. 1133 (1965).

Notwithstanding *Von Moltke,* the 7th Circuit Court of Appeals, in United States v. McGee, 242 F.2d 520 (7th Cir. 1957), found a voluntary waiver in a case similar to the instant one. There the trial court had advised the defendant, before a plea of guilty, of his right to counsel and had informed him that the court would appoint counsel in the event he could not obtain counsel. The court, subsequently, asked if he desired counsel, and he answered unequivocally, "No, sir."

The defendant was a thirty-three year old individual, of average age and intelligence, who obtained a high school diploma while in the Army. The defendant contended, on appeal to the 7th Circuit, that his waiver of counsel was not made voluntarily and with full appreciation of the nature of the crime with which he was charged. In denying the defendant's request, the Circuit Court stated:

"Defendant's contention in this regard, stripped of its gloss, is simply that he did not know and was not advised of the 'independent contractor' defense." Id. at 524.

The Court went on to state:

"But it is not the duty of the trial court judge to explain or enumerate for the accused the possible defenses he might raise to the charge against him. * * * This would mean a layman could not plead guilty unless he had the opinion of a lawyer on such questions of law as might arise if he did not admit his guilt." Ibid.

The United States Supreme Court reversed per curiam, ordering a further

hearing on all issues. McGee v. United States, 355 U.S. 17, 78 S.Ct. 64, 2 L.Ed. 2d 23 (1958).

The Supreme Court's decision in McGee was followed by the 6th Circuit in Vellky v. United States, 279 F.2d 697, 699 (6th Cir. 1960). Cf. United States v. Kniess, 264 F.2d 353 (7th Cir. 1959); United States v. Wantland, 199 F.2d 237 (7th Cir. 1952). In Vellky, the defendant, forty years of age, had a lengthy criminal record and had served one term in a penitentiary from 1941 to 1945 for a bad check and another term of three years in Atlanta for the same offense involving a government money order. The trial court, before accepting a guilty plea, asked the defendant:

"I see that you do not have a lawyer. Do you wish one assigned to represent you?" Id. 279 F.2d at 698.

The defendant answered, "No, I do not," and then entered a plea of guilty. Subsequently, the defendant filed a motion to vacate the judgment under § 2255, Title 28, U.S.C., alleging that he had never knowingly or intentionally waived his right to counsel. The District Court's decision, denying relief, was reversed by the 7th Circuit on the basis of the Von Moltke and McGee cases. The Court, in making its decision, stated:

"* * * a defendant, even though he waives assistance of counsel, is entitled to more explanation and discussion of the charge against him and the facts affecting a decision to enter a plea of guilty, than was given in the present case." Id. at 699.

The 7th Circuit, in McGee, relied heavily on Michener v. United States, 181 F. 2d 911 (8th Cir. 1950).

Michener is clearly distinguishable on its facts. There the defendant contended on appeal that he did not realize the results of his pleading guilty to any and all of the charges that were laid in the indictment. The trial court specifically found that the defendant knew what he was doing and, in fact, wanted the longest federal sentence he could get. This Court sustained the trial court's finding and said:

"Appellant also contends that Heisey informed him that 'he [appellant] would have to plead [guilty] to the indictment as a whole', which information was gross misrepresentation and false legal advice by virtue of the case of Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 325, 92 L.Ed. 309. The contention is inconsistent with what appellant said he wanted at the time of arraignment and sentence. * * * He told Heisey, in fact, that he was not concerned about how much time he got, *providing he was sent to a federal penitentiary.*' (Emphasis appellant's.) He was not concerned about the number of the counts to which he pleaded. * * * Appellant himself states that he desired a long federal sentence, hoping thereby to diminish the length of his Wisconsin sentence and his present contention that he was led by misrepresentation to plead guilty to both counts is obviously a mere afterthought. His hope of diminishing the Wisconsin imprisonment motivated his action and as shown by the record, his imprisonment in that state was cut down about twenty seven years. The Von Moltke case, cited by appellant, affords no support for appellant's position here." Id. at 915.

This Court further distinguished Von Moltke saying:

"In the Von Moltke case there was a remand to the trial court to determine the question whether 'petitioner did not competently, intelligently, and with full understanding of the implications, waive her constitutional right to counsel.' And if she did not so waive, an order should be entered releasing her from custody. In the instant case, on that precise question of waiver of counsel, there was a finding by the trial court that appellant 'intelligently, competently and intentionally waived his right of assistance of counsel' and that finding was affirmed, supra, [Michener v. Johnson, 9 Cir.] 146 F.2d 129, 130." Id. at 917, n. 2.

In the instant case, it was essential that the defendant understand the presumption which is applicable to possession of recently stolen automobiles. In my judgment, *McGee* is directly in point and the failure to advise the defendant of the existence of the presumption is a sufficient basis, standing alone, on which to find that the defendant did not knowingly and intelligently, and with a full understanding of the implications, waive his right to counsel.[4]

In addition, however, there is no indication that the court explained the range of allowable punishment, or possible defenses to the charges.

Nor is there any testimony to indicate that the defendant, because of his experience, background or conduct, understood the operation of the presumption, the range of allowable punishment, or possible defenses to the charges without an explanation.[5] Nor is there any indication that he was consciously "playing it smart," or that he had a feeling he could represent himself more competently than an attorney.

He made no objections during the course of the trial, even though highly prejudicial and incompetent testimony was offered and received into evidence. He took the stand in his own behalf and testified freely when and how the automobile in question came into his possession.[6] His cross-examination was inept and frequently did more to confuse than to clarify.

In my judgment, the defendant did not knowingly, intelligently and with a full understanding of the implications, waive his constitutional rights to counsel. The defendant is, therefore, entitled to a new trial.[7]

## PLAIN ERROR WAS COMMITTED IN RECEIVING CERTAIN HEARSAY EVIDENCE AND IN PERMITTING TESTIMONY AS TO THE CONTENT OF CERTAIN RECORDS.

There is competent testimony to establish that the Chevrolet was stolen September 24, 1964. The defendant freely admits that he came into possession of the car about a month later, and that he transported it from Indiana to Arkansas in late December, 1964. To establish that the defendant was guilty of a violation of 18 U.S.C.A. § 2312, however,

---

4. The jury was instructed with respect to it as follows:

    "Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew that the property had been stolen, * * * * "

5. Compare Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236 (1942); United States v. Redfield, 197 F.Supp. 559, 572 (D.C.Nev.1961), aff'd. 295 F.2d 249; Burstein v. United States, 178 F.2d 665 (9th Cir. 1949).

6. As if to cinch the case against himself, he asked and was given permission to make an additional statement to the jury after it was instructed. He then proceeded to clarify otherwise vague testimony as to when the car came into his possession by fixing the date as about October 24, 1964.

7. In a concurring opinion in Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, Justice Stewart wrote:

    "When a defendant has been denied counsel at trial, we have refused to consider claims that this constitutional error might have been harmless. 'The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.' Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L. Ed. 680. That, indeed, was the whole point of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, overruling Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595. Even before trial, when counsel has not been provided at a critical stage, 'we do not stop to determine whether prejudice resulted.' Hamilton v. State of Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114; White v. State of Maryland, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193." Chapman v. State of California, 87 S.Ct. 824 (U.S. February 21, 1967).

it was also necessary to show that the defendant knew the car was stolen.

The defendant denied such knowledge and testified that he came into possession of the car when he made a loan to Ellsworth Turner and accepted the car as collateral. There is no direct testimony indicating that the defendant knew the car was stolen until it was taken from him by the police on March 6, 1965. The defendant did not attempt to conceal[8] or change the appearance of the car. Neither the motor serial number nor the body serial number was altered.[9] The defendant did not attempt to sell the car during the time it was in his possession.

As the testimony showed that the defendant came into possession of the car within a month of when it was stolen, the trial court properly instructed the jury as follows:

"Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew that the property had been stolen. * * * " [10]

In view of this presumption and defendant's explanation, the defendant's guilt or innocence turned largely on whether he was believed by the jury. His credibility became the crucial issue, thus evidence casting doubt on that credibility was critical to the ultimate jury determination.

1. *Harry Thomas, of the Arkansas State Police, and John Moore, a Special Agent of the Federal Bureau of Investigation, testified at length regarding information they received that the vehicle registrations were false and that the cars had been stolen.* Thomas in part, testified:

"A. * * * I sent off for registration information on the '65 Indiana tag, which I got off of the Ford Thunderbird. I also sent off for information on the '64 Indiana tag bearing 45-R Roberts 1690, which was displayed on the '64 Chevrolet. I received information back by radio that these two tags were issued to cars other than the two that I had there.

"Q. Did you ask for any registration certificate for this Chevrolte (sic)?

"A. No, sir—well, I asked for it. I asked what she had and she stated 'nothing'.[11] After getting the registration information back by radio from Indiana, I realized that I needed to go more thoroughly into the cars, and I probably needed some assistance and I asked Agent John Moore, of the F.B.I., who is stationed at Pine Bluff, to come into the area and assist me, and we examined the cars, and through information that he was able to obtain through his office and through our radio, we did determine that the cars—

---

8. Defendant's testimony that he used the car frequently during the two months it was in Indiana was undisputed, as was testimony that the car broke down while he was driving it from Gary, Indiana, to Grady, Arkansas, and that he asked the police of a small town near Chicago to leave the car with them. It is also undisputed that on being refused, he towed the car the remainder of the way, receiving a traffic ticket from the state police.

9. It is interesting to compare the defendant's conduct in the present case, and the condition of the car when found, with that of other defendants in similar cases. In McCloud v. United States, 75 F.2d 576 (6th Cir. 1935), the appellant told three versions of how he came into possession of the car. When the stolen car was found in his possession, the motor numbers had been changed. In United States v. Wheeler, 219 F.2d 773 (7th Cir. 1955), the serial numbers on the auto body had been filed off.

10. The record does not disclose why the defendant was not indicted until February 14, 1966.

11. Thomas here refers to a conversation he had with the defendant's sister. Elsewhere in the record, he was permitted to testify at length as to the conversations which were not held in the defendant's presence. The conversations tended to cast doubt on the defendant's testimony and were thus prejudicial.

one, the Chevrolet—had been reported stolen in St. Louis, Missouri, on September 24, 1964, and the Thunderbird had been reported stolen on September 30, 1964, in Chicago, Illinois. I have a copy of the police report from those two cities.

"Q. You learned this through your inquiry because of your official connection with Arkansas State Police?

"A. Yes, I did."

And, Moore was permitted to testify as follows:

"A. The '64 Chevrolet, and I also examined the—I examined the Chevrolet at the Grady City Hall, and I examined the Thunderbird at Mrs. Trotter's residence.

"Q. Upon examination of these cars, did you attempt to ascertain the ownership of them?

"A. Yes, I did.

"Q. What did you learn upon that attempt?

"A. On March 16th, we received information through our official offices in Indianapolis, Indiana, that the 1964 Chevrolet vehicle, identification number 41467S299311, which is the vehicle that was at the Grady City Hall, was stolen September 24, 1964, from this Chevrolet place in St. Louis, Missouri. This check, by the way came from the National Automobile Theft Bureau.

\*    \*    \*    \*    \*    \*

"A. \* \* \* I also learned that the '64 Thunderbird vehicle, identification number 4Y87Z186012, which is the car I looked at in Mrs. Trotter's front yard, was stolen September 30, 1964, from the Yates Motor Company, in Chicago, Illinois. This vehicle had been left there for servicing and when the owner called for it, it couldn't be found."

Much of the above testimony was hearsay. Queen v. Hepburn, 7 Cranch 290,

291, 3 L.Ed. 348 (1813); Peppard v. United States, 314 F.2d 623, 627 (8th Cir. 1963); In re Sawyer's Petition, 229 F.2d 805, 809 (7th Cir. 1956); Landstrom v. Thorpe, 189 F.2d 46, 53, 26 A.L.R.2d 1170 (8th Cir. 1951); Kercheval v. United States, 12 F.2d 904, 908 (8th Cir. 1926); 5 Wigmore, Evidence § 1362 (3d ed. 1940); Model Code of Evidence rule 502 (1942). It did not fall within exceptions to the rule. See 28 U.S.C.A. § 1732.

While the hearsay testimony with respect to the Chevrolet was in part cumulative, it tended to discredit the defendant's statements that he was rightfully in possession of the car.

The hearsay testimony with respect to the Thunderbird was highly prejudicial as, without it, there would have been no testimony indicating that the defendant may have transported other stolen vehicles in interstate commerce to his sister's home in Arkansas.

To reiterate, the defendant's credibility was a crucial issue. Thus, hearsay evidence which had the effect of attacking that credibility was prejudicial and its admission was error.

2. *The record is filled with numerous references to registration forms, license plates and official reports.* Although it appears that the documents were available, and probably in the hands of a testifying witness, the only documentary evidence offered or received was a copy of an invoice on the stolen 1964 Chevrolet from the General Motors Corporation to the St. Louis, Missouri, garage.[12]

It is the established rule that the best evidence extant and obtainable must be used in a trial, and that secondary evidence of a fact may not be offered so long as primary evidence is extant and obtainable. Renner v. Bank of Columbia, 9 Wheat. 581, 595, 6 L.Ed. 166 (1824); Williamson v. United States, 272 F.2d 495 (5th Cir. 1960); United States v. Manton, 107 F.2d 834, 845 (2d Cir.

12. If an original document has been destroyed or is difficult to obtain, a copy, of course, is preferable to oral testimony which might well be admissible. See Riggs

v. Tayloe, 9 Wheat. 483, 486, 6 L.Ed. 140, (1824) (Original contract destroyed, oral testimony permitted.)

1938); McDonald v. United States, 89 F.2d 128, 137 (8th Cir. 1937), cert. denied, 301 U.S. 697, 57 S.Ct. 925, 81 L.Ed. 1352 (1937); Billington v. United States, 15 F.2d 359, 360 (6th Cir. 1926); see McCormick, Evidence § 197 (1954); 4 Wigmore, Evidence § 1185 (3d ed. 1940); 22A C.J.S. Criminal Law §§ 692, 693 (1961). In this case, the rule was not followed and the defendant was prejudiced as a result of the failure to follow it.

For example, Patrolman Thomas testified that at the outset of his investigation, the defendant's sister produced a document purporting to be an "owner's copy" or the registration certificate on the 1964 Thunderbird. This certificate also purported to be issued by the Indiana Motor Vehicle Department. Without requiring production of the document, the court permitted Thomas to state that the serial numbers on the car and the registration certificate were the same, but that the license number appearing on the certificate and that on the automobile was different.[13] As Thomas was testifying to the contents of the registration certificate, its production should have been required.

The best evidence rule was again violated during the direct examination of the Chief Clerk of the Indiana Motor Vehicle Department. He testified he had checked the license plate numbers provided him by the investigating officers with the automobile registration certificates on file in his office. He stated that license plate #45 R 1690 was issued to Rose Pritchett (defendant's common law wife) on a 1950 Chevrolet on April 3, 1964. He further stated that license plate #45 R 3307 was issued to defendant on the same 1950 Chevrolet on October 22, 1964.

The failure to require the production of the documents in question was more than a harmless error as it tended to establish (1) that a dual or false registration had been made on the 1950 Chevrolet, (2) that the date of defendant's admitted possession of the stolen automobile and the date the registration certificate on the 1950 Chevrolet coincided with one another, (3) that the license number and plate registered to the 1950 Chevrolet was found on the stolen automobile. These statements helped weave the web of circumstantial evidence necessary to convince the jury that the defendant knew the car was stolen and impaired his credibility.

In conclusion, it is to be noted that the trial court, in advising the defendant that it and the United States Attorney would fully protect his rights, expressed that responsibility which is owed to any defendant, who, in a criminal case, decides to proceed *pro se*. The United States Attorney was under an obligation to avoid offering evidence he knew to be incompetent and the trial court under an equally heavy burden to avoid receiving such evidence.[14] Both were under an obligation to insure the defendant a fair trial.

I would reverse and remand for a new trial.

---

13. Patrolman Thomas testified, at one point in the trial, that the 1964 Chevrolet bore license plate #45 R 3307. At another, he stated the license number was #45 R 1690. His testimony regarding checking of registration certificates given him by Mrs. Trotter is ambiguous as to the 1964 Chevrolet.

14. In Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), Justice Sutherland wrote: "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones." See generally Canon No. 5, Canons of Professional Ethics, American Bar Association.