Thomas Albert GALLOWAY, No. 19543,
Petitioner,

v.

John C. BURKE, Warden, Respondent.

No. 67–C–237.

United States District Court
E. D. Wisconsin.

March 19, 1969.

Edward D. Cleveland, Milwaukee, Wis., for petitioner.

Bronson C. La Follette, Atty. Gen., William A. Platz, Robert E. Sutton, Asst. Attys. Gen., Madison, Wis., for respondent.

REYNOLDS, District Judge.

## OPINION AND ORDER

Petitioner, Thomas Albert Galloway, was convicted of burglary on July 6, 1965, after a jury trial in the Circuit Court of Milwaukee County. An appeal was denied by the Wisconsin Supreme Court on November 1, 1966, in Galloway v. State, 32 Wis.2d 414, 145 N.W.2d 761, 147 N.W.2d 542 (1966).

All of the issues raised before the Wisconsin Supreme Court, except for the claim of invalidity of the warrant, which has been omitted in this petition, are again raised in the present petition for writ of habeas corpus. The facts out of which the issues arise are the same facts presented to the Wisconsin Supreme Court. The transcript of the trial court proceedings together with a statement of facts submitted by petitioner and not challenged by the state have made an evidentiary hearing in this court unnecessary.*

Petitioner, who is incarcerated in the Wisconsin State Prison pursuant to the conviction of burglary, claims that he was

denied due process by the state courts for essentially the following reasons:

1. The trial court denied his request for a continuance, made on the day of trial, to obtain the presence of certain witnesses.

2. The trial court refused to grant him a continuance, again on the day of trial, to allow him to hire an attorney to replace his court-appointed counsel.

3. There was no evidence upon which conviction could rest.

4. Misconduct by the prosecution denied him a fundamentally fair trial.

5. The trial court committed procedural errors which denied him a fundamentally fair trial.

## FACTS

Thomas Albert Galloway was taken into custody in the City of Milwaukee, Milwaukee County, Wisconsin, on March 7, 1965. A complaint and warrant for his arrest on the charge of burglary, in alleged violation of § 943.10(1), Wisconsin Statutes, were issued on March 8, 1965. Being unable to raise bail, Mr. Galloway remained in the county jail thereafter until his case was tried.

On April 5, 1965, Mr. Galloway was brought before Branch No. 11 of the Milwaukee County Circuit Court and asserted his indigency. The court appointed an attorney as Mr. Galloway's counsel and adjourned the case to April 8, 1965, after entry of a not guilty plea, counsel waiving preliminary hearing.

On April 8, 1965, a plea of guilty was entered and testimony was then taken. During the testimony, Mr. Galloway expressed his desire to re-enter a plea of not guilty. All proceedings were then set aside and held at naught. A plea of not guilty was entered, and the case was transferred to Branch No. 12 of the

---

* The State of Wisconsin failed to file a timely response to petitioner's proposed statement of facts. Thereupon this court issued an order stating that if the state did not respond by a date certain, all of the facts alleged by petitioner would be taken as true and correct for the purposes of this habeas corpus petition.

Since the state still failed to file a response to the proposed statement of facts, this court has assumed the facts as alleged to be true, and the opinion is based on the allegations of the petition, the statement of facts, and the transcript of the state court proceedings.

Milwaukee County Circuit Court. The case was adjourned to April 9, 1965.

On April 9, 1965, Mr. Galloway expressed to the court his dissatisfaction with the manner in which his attorney was representing him, and the attorney asked leave to withdraw as counsel. The court then appointed another attorney as counsel. The case was adjourned to the afternoon of the same day. When court reconvened, a jury trial was requested and scheduled for July 6, 1965, at 9:00 A.M.

On appearing for trial, Mr. Galloway objected to being represented by counsel paid by the state, told the judge that he was not satisfied that his attorney was adequately prepared or disposed to conduct his defense (particularly because the attorney had not procured the attendance of witnesses that Mr. Galloway had asked him to procure), and requested a continuance to obtain counsel of his own choice who would procure the attendance of such witnesses. No previous request for a continuance had been made. There was no showing that Mr. Galloway's financial condition had changed so that in fact he could hire an attorney. After a statement by the attorney to the effect that he did not feel such witnesses would be helpful in Mr. Galloway's defense, the judge denied the request for a continuance, and the case proceeded immediately to trial.

The petitioner was accused, tried, and convicted by a jury of having entered the office of U. S. Mercantile Systems, Room 401, in the Warner Theater office building in Milwaukee with intent to steal. Nothing was missing from such office, and Mr. Galloway had nothing from the office on his person when arrested. Mr. Galloway was apprehended on the roof or patio outside the fourth floor corridor and offices involved on Sunday afternoon, March 7, 1965.

The testimony of the police officers as to what they did and saw prior to their apprehending Mr. Galloway on the roof and relative to his alleged presence inside such office contained inconsistencies. However, both men positively identified Galloway as the man they saw in the office prior to making the arrest.

■ At the time of his arrest, Mr. Galloway was 52 years of age, and he claims a man of his years could not have climbed through a transom. The only testimony as to the manner in which Mr. Galloway might have entered the office involved was to the effect that entry was possible through the transom above the door opening from the corridor into such office. Such transom was 14 inches high and 28 inches wide, was about $7\frac{1}{2}$ feet above the floor, and opened to the inside of the office. The transom could be opened only as far as the horizontal position, extending some 14 inches into the office, and the glass therein was not broken. There was no means or projection below the transom by which a person could elevate himself to the level of the transom, except the knob on the door itself. I believe that it is for the trier of the fact to determine whether or not the petitioner did in fact climb through the transom.

The police did not find any fingerprints or materials within the office involved, or upon any of the means of access thereto which could be identified as belonging to or in any way connected with the person of Mr. Galloway.

Mr. Galloway testified in his own behalf and denied ever having been in the office involved. He stated that, having been suffering from very sore and swollen heels (due to ill-fitting new shoes), and having noticed in the lobby of the building that a Dr. Avellone had an office on the fourth floor, he had gone to the fourth floor in the hope that he might find the doctor in his office and might obtain medication for his heels.

Having knocked at Dr. Avellone's office (which was next to that of the office involved) and receiving no response, Mr. Galloway said that he was about to go downstairs when he heard what seemed to be a violent disturbance on the stairway. Wishing to avoid trouble (having been only recently released from prison), he said he went out the corridor window to the roof where he was standing only a

short time when a police officer came out the corridor window and arrested him.

Mr. Galloway was taken to the U. S. Mercantile office and interrogated, during which time he observed the police also interrogating a young man who admitted having a record. This young man, unknown to Mr. Galloway, was released, while Mr. Galloway was charged with burglary.

The police had come to the building in response to a call that there was a noisy disturbance therein.

On the same evening of his arrest, at 6:07 P.M., Mr. Galloway was admitted to County General Hospital where he was treated for infected blisters on both feet.

No witnesses other than Mr. Galloway testified for the defendant at his trial.

At Mr. Galloway's trial, the court instructed the jury that the prosecution had the burden of proving his intent to steal beyond a reasonable doubt. Immediately following such instruction, without stating any distinction between intent and motive, the court instructed the jury as follows:

"Proof of said motive to commit a crime is not essential or indispensable to a conviction."

The jury returned a verdict of guilty, and the court adjudged Mr. Galloway guilty on such verdict and sentenced him to an indeterminate term of not more than eight years in the Wisconsin State Prison, Waupun, Wisconsin, said sentence to commence on July 7, 1965. Mr. Galloway has been incarcerated at Waupun since that time.

## WAS THE TRIAL COURT'S DENIAL OF A CONTINUANCE REQUESTED THE DAY OF TRIAL FOR THE PURPOSE OF OBTAINING CERTAIN WITNESSES, A DENIAL OF DUE PROCESS?

Petitioner had requested that his attorney call as witnesses three persons whose testimony it is assumed would have tended to corroborate petitioner's story.

The persons whose presence Mr. Galloway desired were: the custodian of the building in which petitioner was arrested, the young man who was interrogated by police in the same office of the theater building at the same time as petitioner, and the nurse who later treated petitioner at the hospital for infected blisters on his feet.

Petitioner's defense counsel determined that the testimony of these people would not be helpful to the defense and they were not called. Had they been called, petitioner claims (and the state has not contested the claim) that they would have offered approximately the following testimony.

Mr. Halverson, the custodian of the Warner Theater Building on duty the day that Mr. Galloway was arrested, would have testified that there were a number of other persons creating a disturbance on the stairway above the ground level of the Warner Theater Building prior to the time that the police were called, that it was because of this disturbance that the police were called, and that the disturbance occurred shortly prior to the time that Mr. Galloway was arrested.

The nurse who attended him on the evening of March 7 at the Milwaukee County General Hospital would have testified that Mr. Galloway was in police custody at the time, that both of his heels were sorely infected and swollen, and that she administered to him an antibiotic injection for the infection.

The young man whom Mr. Galloway had observed being interrogated by the police in the office of U. S. Mercantile Systems had been apprehended by the police in the Warner Theater Building at approximately the same time that Mr. Galloway was apprehended. He admitted, in Mr. Galloway's hearing, that he had a prior police record. No further claim as to the content of this man's testimony is made; however, great emphasis is placed by petitioner on the fact that this man had a record.

 It is too well established to require citation that a request for a con-

tinuance is addressed to the sound discretion of the trial court. The request here was made on the day of trial after the matter had been pending almost three months. The defendant's attorney stated that he did not believe that the witnesses defendant requested would be helpful to the defense of the case. Consequently, on the facts then presented, this court is not prepared to say that the trial court abused its discretion and denied defendant a fundamentally fair trial when the continuance was refused.

■ The statements as to what the testimony of the witnesses would have been, had they been called, does not compel a different conclusion. A state prisoner seeking release under federal habeas corpus must prove that the testimony of witnesses, whom he claims should have been subpoenaed to testify, would have had a probable effect on the outcome of his trial. United States ex rel. Cooper v. Reincke, 219 F.Supp. 733 (D.C.Conn.1963), aff'd 2 Cir., 333 F.2d 608, cert. denied 379 U.S. 909, 85 S.Ct. 205, 13 L.Ed.2d 181.

Viewed in the light most favorable to the petitioner, the testimony of the witnesses would have corroborated his story in only two aspects—the custodian of the building would have corroborated the fact of a disturbance in the building, and the nurse would have corroborated Mr. Galloway's sore heels. Neither of these facts were denied by the state, and neither of these facts constitute an element of the crime of burglary. At most, these witnesses would have been in the nature of character witnesses in that they made the story of petitioner more credible.

■ This court is not prepared to say that, as a matter of constitutional law, a defendant is entitled to a continuance at any time prior to trial to procure the attendance of witnesses who may affect his credibility. The question would be different if it were claimed that a missing witness would establish a defense to the crime charged; however, such is not the question before this court.

## WAS THE REFUSAL TO GRANT A CONTINUANCE ON THE DAY OF TRIAL TO ALLOW DEFENDANT TO REPLACE HIS COURT-APPOINTED COUNSEL A DENIAL OF DUE PROCESS?

At his arraignment, petitioner asserted his indigency, and an attorney was appointed to represent him. Petitioner became dissatisfied with that attorney, and a second attorney was appointed to represent him. On the day of trial, petitioner again indicated his dissatisfaction with his court-appointed attorney and asked for a continuance to hire his own counsel. Since petitioner was indigent when counsel was appointed, is apparently still indigent and is still represented by appointed counsel, just how petitioner planned to hire an attorney himself is a matter of some mystery to this court. There was not and has not been any assertion that petitioner could have in fact retained counsel.

■ In the view of this court, it is a frivolous claim, when there has been no showing of a change in financial condition, to assert that refusal of a continuance to allow an indigent to hire an attorney is a denial of due process.

■ This court further finds no merit in the claim that petitioner was inadequately represented. For the representation to amount to a denial of a constitutional right, there must be such a lack of representation as to amount to virtually no representation at all. United States v. Dilella, 354 F.2d 584 (7th Cir. 1965); Williams v. Beto, 354 F.2d 698 (5th Cir. 1965). The record in this case does not support such a claim. The defense counsel actively cross-examined the state's witnesses, and in all other ways sought to preserve the rights and assert the innocence of Mr. Galloway. The decision not to call the witnesses requested by Mr. Galloway cannot be deemed to be anything more or less than trial strategy. It was not a denial of a fundamentally fair trial, nor does such decision amount to a lack of representation.

## WAS THE EVIDENCE SO INCREDIBLE AS TO AMOUNT TO A TOTAL LACK OF EVIDENCE UPON WHICH A CONVICTION COULD REST?

 Clearly, if there is *no* evidence to support a conviction, such a conviction is a denial of due process. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961). It is equally clear, however, that the writ of habeas corpus is not to be used in the federal court merely to give a person convicted in a state court a new trial before a federal court sitting without a jury. Petition of Sawyer, 129 F.Supp. 687 (E.D.Wis.1955), aff'd 229 F.2d 805 (7th Cir. 1956), cert. denied Sawyer v. Barczak, 351 U.S. 966, 76 S.Ct. 1025, 100 L.Ed. 1486 (1956).

The question presented to this court is essentially the question presented in Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624 (1960), and was aptly phrased by the Supreme Court when it stated at page 199, 80 S.Ct. at page 625:

"* * * The ultimate question presented to us is whether the charges against petitioner were so totally devoid of evidentiary support as to render his conviction unconstitutional under the Due Process Clause of the Fourteenth Amendment. Decision of this question turns not on the sufficiency of the evidence, but on whether this conviction rests upon any evidence at all."

In the case before this court, petitioner asserts as a ground for the writ of habeas corpus that his conviction was in violation of the due process clause of the Fourteenth Amendment because it was not supported by credible evidence. Although raised through different vehicles (i. e. certiorari in *Thompson*; application for writ of habeas corpus here), the questions presented are identical. Consequently, the standards applied must also be the same. This court must determine whether petitioner's "conviction rests upon any evidence at all."

 In the view of this court, there was credible evidence to support petitioner's conviction. Each police officer testified that he saw petitioner in the office prior to the arrest. Each officer identified petitioner at the trial. There was evidence that a drawer in a desk in the office had been pried open. There was evidence that a metal bar (described as a "pinch bar") was found in petitioner's pocket.

To determine that the testimony of the police officers was incredible as a matter of constitutional law would, in effect, require this court to retry petitioner for the state crime of burglary. This court is not willing to take that step; such is not the function of the writ of habeas corpus.

 The inconsistencies in the officers' testimony, so heavily dwelt on by petitioner, all relate to their conduct in investigation of the activities in the theater building. Did they go up the elevator or the stairs? Which officer climbed up to look over the transom? When did one officer go for a ladder? Was the ladder used? Conceding that the testimony of the officers differed on these questions, this court cannot say that such differences make the balance of their testimony incredible.

## DID MISCONDUCT BY THE PROSECUTION DEPRIVE PETITIONER OF A FUNDAMENTALLY FAIR TRIAL?

Petitioner contends that two remarks by the assistant district attorney during the course of the trial deprived the trial of its fundamental fairness.

 When one of the arresting officers was being questioned by defense counsel as to what had been found on the person of petitioner, the state volunteered that it would stipulate that Mr. Galloway "had no narcotics or anything of that nature on him." I agree with the Wisconsin Supreme Court that this remark was improper. However, I further find that the remark was sufficiently obscure so that it did not deprive the petitioner of due process of law.

Petitioner also complains of the reference by the assistant district attorney, during the trial, to petitioner's refusal to answer questions at the time of his arrest. Petitioner's attorney objected to the statement, and the court sustained the objection. However, the court did not instruct the jury to disregard the statement.

In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 694 (1966), the Supreme Court indicates, at footnote 37, that:

> "* * * The prosecution may not * * * use at trial the fact that he stood mute or claimed his privilege [against self-incrimination] in the face of accusation. * * *"

The *Miranda* rules, however, were given prospective application only in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Consequently, petitioner does not come within the protection of this rule as he was tried prior to its rendition.

## DID THE PROCEDURE EMPLOYED BY THE TRIAL COURT DENY PETITIONER DUE PROCESS OF LAW?

Petitioner asserts that the trial court committed procedural errors and that these errors constitute a denial of due process. All of the actions asserted as error by the trial court have already been dealt with in this opinion except the claim that the jury instruction dealing with motive was equivocal and misleading.

The trial court gave an instruction as to the state's burden of proof, beyond a reasonable doubt, of defendant's intent to take property. No error is asserted as to that instruction. Immediately thereafter the court charged that "Proof of a said motive to commit a crime is not essential or indispensable to a conviction." The petitioner lays great stress on the word "said" immediately precedent to "motive," and argues that this equated "motive" and "intent" in the minds of the jurors.

Even assuming that the instruction was erroneous, the error does not reach constitutional proportions. See Poulson v. Turner, 359 F.2d 588 (10th Cir. 1966), cert. denied 385 U.S. 905, 87 S.Ct. 219, 17 L.Ed.2d 136.

The foregoing constitute the findings of fact and conclusions of law in this case in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

The court wishes to thank Attorney Edward D. Cleveland of the Milwaukee Bar, who was appointed by the court, for his able and tireless work on behalf of petitioner.

For all the foregoing reasons,

It is ordered that the petition for writ of habeas corpus on behalf of Thomas Albert Galloway shall be and it hereby is denied.